[No. H031659. Sixth Dist. Aug. 5, 2009.]

GEORGE R. DRUMMOND et al., Plaintiffs and Appellants, v.
MICHAEL G. DESMARAIS et al., Defendants and Respondents.

COUNSEL

Law Offices of Michael T. Morrissey and Michael T. Morrissey for Plaintiffs and Appellants.

Willoughby, Stuart & Bening, Bradley A. Bening, Ellyn E. Nesbit; Law Offices of Michael G. Desmarais and Michael G. Desmarais for Defendants and Respondents.

OPINION

RUSHING, P. J.—Plaintiffs George R. Drummond, Rebecca Drummond, and Jesse Marion brought this action against their former attorney, Michael G. Desmarais, and others, alleging that Desmarais maliciously prosecuted two previous suits against plaintiffs, one seeking to recover fees claimed under a contract to provide legal services to plaintiffs in connection with the estate of their deceased father, and the other alleging that plaintiffs had maliciously sued Desmarais when they objected to a petition seeking to pay his fees out of their father's estate. Defendants moved to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16 (section 425.16), arguing that plaintiffs would be unable to show that either of the predicate lawsuits was filed without probable cause or was terminated favorably on the merits. The trial court granted the motion and entered a judgment of dismissal. Plaintiffs appeal, charging the trial court with innumerable errors. We conclude that since Desmarais's suit for fees has been finally resolved in his favor, plaintiffs' claims predicated on that action must fail. We also conclude that while the evidence before the trial court would amply sustain findings that Desmarais acted maliciously and without probable cause in suing his clients for malicious prosecution based on their objections to his fees, his voluntary dismissal of that suit after reversal of the underlying judgment on appeal was not a termination on the merits in plaintiffs' favor, such as would be required to sustain their malicious prosecution claim.

Accordingly, we will affirm.

BACKGROUND

A. *Prior Proceedings*

This is the fifth major appellate chapter in a cluster of related suits and disputes. Because plaintiffs' counsel has once again failed to supply an

adequate statement of the operative facts, we will once again extract the relevant background primarily from our prior opinions.

Plaintiffs' father, George Marion Drummond (decedent), died on August 28, 1998, leaving an estate worth several million dollars. (*Estate of Drummond* (Mar. 21, 2003, H023857) [nonpub. opn.] (*Drummond I*); see *Estate of Drummond* (June 20, 2005, H026373 & H026660) [nonpub. opn.] (*Drummond II*); *Estate of Drummond* (2007) 149 Cal.App.4th 46 [56 Cal.Rptr.3d 691] (*Drummond III*); *Drummond v. Temmerman, Desmarais & Phillips* (June 10, 2009, H030601) [nonpub. opn.] (*Drummond IV*).) His widow, Ok Yon Choe, whom he had married a few weeks before his death, petitioned to admit into probate a purported will by which he ostensibly bequeathed his entire estate to her. (*Drummond I, supra,* H023857; see *Drummond II, supra,* H026373 & H026660; *Drummond III, supra,* 149 Cal.App.4th 46; *Drummond IV, supra,* H030601.) After initially consulting Attorney James Rodriguez, plaintiffs engaged defendant Michael Desmarais to oppose the petition and thereby preserve their claims to shares of the estate by intestate succession. The agreement entitled Desmarais to a contingency fee of up to 35 percent of the net amount recovered.

Eventually the probate court granted judgment on the pleadings against the widow's petition to admit the proffered instrument to probate. While her appeal from that order was pending, the parties reached a settlement. (*Drummond I, supra,* H023857.) In November 1999 the court approved a first distribution of estate assets including over $600,000 to Desmarais as fees. On March 14, 2001, the administrator filed a petition seeking a further distribution including about $150,000 in fees to Desmarais. On March 29, 2001, Jesse Marion appeared at the hearing on this petition and requested a continuance on the ground, among others, that she had "major issues with attorney fees and tax[es]." Plaintiffs engaged their present attorney, Michael Morrissey, and filed notice of objection on April 25, 2001, followed by further declarations and objections on June 1 and June 28, 2001.

In these filings plaintiffs complained, as summarized in *Drummond II, supra,* H026373 and H026660, that Desmarais, the administrator, and counsel for the administrator "had 'attempted to defraud the I.R.S. in the hopes of personal gain,' that [the administrator] and his lawyer had filed a fraudulent tax return, that they had overcharged the estate, that the extraordinary fees claimed by [the administrator's] attorney were excessive, that Children's consent to the contingency fee agreement was obtained by duress and undue influence, that the contingency fee agreement was unconscionable and unenforceable, that Desmarais had entered into an illegal fee-sharing arrangement with Rodriguez, that Desmarais had concocted a scheme to have his fee calculated against the gross amount allocated to Children contrary to the

provisions of the fee agreement, and that Desmarais had abandoned his clients and withdrawn from the case. They asserted that Desmarais expected to receive $1.5 million while Children had 'only received a combined total of $600,000.' "[1]

Desmarais and the administrator moved for summary judgment on the objections. The probate court granted that motion and entered judgment on August 31, 2001. Plaintiffs appealed on October 30, 2001. They then filed a civil action against Desmarais, his firm, and Rodriguez, reasserting the claims lodged as objections in the probate matter.

On February 22, 2002, Desmarais filed, in propria persona, a "Complaint for Compensatory and Punitive Damages—Malicious Prosecution of Civil Action." In it he alleged that George Drummond and Jesse Marion, together with Attorney Morrissey, had, "[o]n March 29, 2001, June 1, 2001, and June 27, 2001 . . . instituted a civil action against [Desmarais]" claiming "damages in the sum of $1,500,000 as the proximate result of a fee agreement between [Desmarais] and [the] defendants that was unconscionable and was procured by [Desmarais's] fraud, breach of fiduciary duty and professional negligence and abandonment of representation. The action was entitled Estate of George Marion Drummond—Objection, George R. Drummond, Jesse L. Marion and Rebecca J. Drummond, Contestants v. Temmerman, Desmarais & Phillips, LLP, Michael G. Desmarais and James J. Rodriguez, Richard H. Lambie and John V. Willoughby, Defendants, No. 1-98-PR143829."[2] Nowhere in the complaint did Desmarais disclose that he had invented this title, which had never been borne by any pleading, or that the only relevant events on the dates set forth concerned objections by estate claimants to a proposed distribution of estate assets. He went on to allege that summary judgment had been granted on August 30, 2001, "in favor of all defendants in action number 143829, including plaintiff herein," without mentioning that the resulting judgment was then on appeal. He alleged that the "action" was brought without probable cause in that the contestants "did not honestly and reasonably believe that there were grounds for the action because [they] had obtained a judgment recovering 52% of the decedent's estate at the expense

---

[1] In fact plaintiffs had at that time received some $890,000 out of the estate.

[2] The dates alleged, and particularly the first, are puzzling. It appears that plaintiffs' only written submissions around this time were filed on April 25, 2001, June 1, and June 28, 2001. March 29 was the date of the hearing at which Jesse Marion first appeared and alluded orally to " 'major issues with attorney fees and tax[es].' " Desmarais apparently intended to cite these oral comments, and not the formal notice of objection filed a month later, as the initiating event in the underlying "action" against him. We have no occasion to consider whether an oral objection in probate proceedings could ever form the basis for a malicious prosecution suit. Nor need we consider the effect of the fact that there never was an affirmative pleading by plaintiffs against Desmarais, as such, in the probate proceedings. Indeed, as we later concluded in *Drummond I, supra,* H023857, Desmarais was not even a party to those proceedings.

of his surviving spouse due to the services rendered by plaintiff over a three year period of time following multiple law and motion and evidentiary hearings, two settlement conferences supervised by retired California Supreme Court Justice Edward A. Panelli and the entry of multiple judgments in their favor, including the November 1, 1999 judgment by Honorable Thomas P. Hansen that approved plaintiff's fee agreement with defendants." He alleged that they acted maliciously "in that their motive and purpose was to wrong plaintiff by denying him the attorney's fees to which he was entitled pursuant to their fee agreement with him and the November 1, 1999 judgment approving that fee agreement by, among other things, falsely claiming that the fee agreement was unconscionable and was procured by plaintiff's fraud, breach of fiduciary duty, and professional negligence and abandonment of his representation." Finally, he alleged that defendants acted in conscious and deliberate disregard of his rights, entitling him to punitive damages.

On June 19, 2002, the trial court sustained plaintiffs' demurrer to Desmarais's complaint on the ground that an appeal was pending from the underlying judgment. The court granted leave to amend, but stayed the order "during the pendency of the appeal from the judgment in the underlying action . . . , Court of Appeal case number H023857," i.e., *Drummond I, supra,* H023857. This court issued its decision in that appeal on March 21, 2003, reversing the grant of summary judgment on plaintiffs' objections to the second distribution of estate assets, and holding, among other things, that Desmarais had lacked standing to bring such a motion because he was not a party to the proceeding. (*Drummond I, supra,* H023857.) Our remittitur issued on June 20, 2003.

Some 12 days after we issued that decision, Desmarais made himself a party to the probate proceeding by filing a petition there for the fees he claimed were due. At the same time he moved to consolidate the new petition with plaintiffs' civil action against him, for the manifest purpose of bringing the latter before the same court that was presiding over the estate. Morrissey objected to both filings, in response to which Desmarais asserted a right to judgment on the pleadings because plaintiffs had failed to state facts sufficient to constitute a defense to the petition. Under rather remarkable circumstances described more fully in *Drummond II, supra,* H026373 and H026660, the trial court apparently granted this request; in any event it entered a judgment on July 11, 2003, requiring plaintiffs to pay some $300,000 to Desmarais. Plaintiffs appealed.

Meanwhile, apparently relying on the appellate judgment in *Drummond I, supra,* H023857, plaintiffs moved to dismiss Desmarais's malicious prosecution complaint. The trial court denied that motion on July 1, 2003. On September 10 of that year, with the children's second appeal (*Drummond II,*

*supra*, H026373 & H026660) now pending, the court denied a second motion to dismiss. On June 20, 2005, we issued our decision in that matter, reversing the judgment on Desmarais's fee petition and directing the probate court to take no further action on it because the petition violated the compulsory cross-complaint rule. (*Ibid.*)

According to a declaration signed some 18 months later, Desmarais voluntarily dismissed his malicious prosecution action without prejudice on July 29, 2005. The dismissal does not appear in the record.

### B. *Proceedings Below*

Plaintiffs apparently filed the complaint in this action in or around late July 2006.[3] It sets forth two distinct claims under a single count for malicious prosecution: first, that Desmarais, aided by his insurer, filed his complaint for malicious prosecution "without probable cause and without any reasonable belief that it could ever be successful"; and second, that all defendants caused the fee petition to be filed against plaintiffs in the probate matter, also without probable cause, "alleg[ing] falsely that the plaintiffs each had a contract requiring them to pay defendant DESMARAIS over $300,000, . . . that the plaintiffs had converted monies from defendant DESMARAIS, . . . [and] that the plaintiffs had received money that was supposed to go to defendant DESMARAIS . . . ."

All defendants demurred to the complaint and moved to strike it under section 425.16. The gist of the motion to strike was that plaintiffs could not show that either of the predicate suits—the probate fee petition or Desmarais's own malicious prosecution suit—had been terminated on the merits in plaintiffs' favor. Defendants also appeared to argue that plaintiffs could not show that Desmarais filed the actions without probable cause. Plaintiffs asserted in opposition that no reasonable attorney, and thus no attorney acting for reasons other than malice, could have filed the malicious prosecution complaint Desmarais filed. They further contended that a jury should decide "whether . . . the voluntary dismissal of the malicious prosecution action [was] a termination . . . on the merits . . . ." Morrissey, who also represented plaintiffs in this matter, filed a declaration the gist of which was that none of

---

[3] We must surmise the fact and date of filing because the complaint, like most of the contents of the appendix, bears no filing stamp (see Gov. Code, § 69846.5) and the appendix does not include the register of actions (Cal. Rules of Court, rules 8.122(b)(1)(F), 8.124(b)(1)(A)). The clerk presumably furnished a copy of the register to appellants under California Rules of Court, rule 8.124(a)(2), but even if the clerk neglected to do so, the superior court has made the register available at its official Web site in accordance with California Rules of Court, rule 2.503(b)(1). According to the register as there reflected, the complaint was filed on July 31, 2006.

the defendants could have acted in good faith, or without malice, in pursuing the two predicate matters. Deborah Drummond, the spouse of one of the plaintiffs, filed a declaration detailing conduct by Desmarais which we describe more fully below in connection with his argument concerning the element of malice. (See pt. III.A, *post*.)[4]

The trial court granted the special motion to strike and entered a judgment of dismissal. This appeal seasonably followed.

### C. *Subsequent Proceedings*

While this matter was pending, the claims asserted in plaintiffs' civil action and Desmarais's cross-complaint were tried to a jury. The jury found by special verdict that Desmarais had breached his fiduciary duties to plaintiffs, but not that plaintiffs suffered legal harm as a consequence. It also apparently found that Desmarais had not charged an excessive fee under the contract and that, assuming the contract did not provide for the calculation of his fee before deducting estate taxes, plaintiffs were not harmed by that calculation because the resulting tax benefits redounded to their advantage. We have now affirmed that judgment in *Drummond IV, supra*, H030601.

### DISCUSSION

### I. *Introduction*

■   The question before us is whether the trial court properly dismissed both of plaintiffs' claims in response to defendants' special motion to strike under section 425.16. Such a motion triggers a two-stage inquiry. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating

---

[4] Defendants filed a reply memorandum largely devoted to the notion that plaintiffs' arguments had already been rejected in various other proceedings. A party's bald characterizations of what other courts have done in related matters—and why—should always be received with caution. First, such characterizations are readily susceptible to distortion and inaccuracy. (See, e.g., *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 549–551 [75 Cal.Rptr.3d 19].) Further, in the absence of some additional showing—such as the conditions for claim or issue preclusion—the actions of other judges are simply irrelevant.

the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

■ The gist of plaintiffs' claims is that defendants wrongfully pursued litigation. Litigation is activity protected by the speech and petition clauses. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735 [3 Cal.Rptr.3d 636, 74 P.3d 737], and cases there cited (*Jarrow*).) The claims therefore fall squarely within the reach of section 425.16. Plaintiffs do not appear to contend otherwise. They therefore necessarily predicate their claim of error on the premise that, contrary to the trial court's view, they have demonstrated a probability that they would prevail on their claims.

■ A plaintiff establishes the requisite probability of success by " 'stat-[ing] and substantiat[ing] a legally sufficient claim.' " (*Jarrow, supra*, 31 Cal.4th at p. 741, quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) The court below found that plaintiffs *stated* a legally sufficient claim in that their complaint is "legally sufficient to establish the elements of malicious prosecution." The pivotal question is therefore whether plaintiffs adequately *substantiated* that claim. That question in turn requires a determination whether the complaint is " ' "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Jarrow, supra*, 31 Cal.4th at p. 741, quoting *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*).) " 'In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Jarrow, supra*, 31 Cal.4th at p. 741, fn. 10, italics omitted, quoting *Wilson, supra*, 28 Cal.4th at p. 821.)

■ In addressing this question the trial court properly focused on the elements of plaintiffs' malicious prosecution cause of action, which are "(a) the institution of an action at the direction of the defendant . . . (b) without probable cause and (c) with malice, (d) termination of the initial action favorably to the plaintiff . . . , and (e) resulting damage." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 469, p. 696; see *id.*, § 486, p. 712.) The court found that in view of the history of the underlying dispute, plaintiffs would be unable to establish that either of the underlying suits was pursued without probable cause, or was finally determined in plaintiffs' favor. The court found that such findings were precluded with respect to both actions by

the ultimate success of Desmarais's "claim for fees," which the court described as "the core dispute in all this litigation." While we disagree with that conclusion as respects the claim predicated on Desmarais's own malicious prosecution claim, we affirm as to both claims because plaintiffs cannot establish a favorable termination on the merits as to either.

## II.  *Probate Petition*

We first address the sufficiency of the facts presented by· plaintiffs to sustain their claim that Desmarais committed the tort of malicious prosecution by pursuing his petition for fees in the probate court. To sustain a malicious prosecution claim, the prior action "must have terminated in favor of the present plaintiff." (5 Witkin, Summary of Cal. Law, *supra*, Torts, § 498, p. 731.) However, it is not enough that the present plaintiff (former defendant) prevailed in the action. (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 [85 Cal.Rptr.2d 726]; *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 827 [71 Cal.Rptr.2d 802].) The termination must " 'reflect on the merits,' " and be such that it "tended to indicate [the former defendant's] innocence of or lack of responsibility for the alleged misconduct." (5 Witkin, Summary of Cal. Law, *supra*, Torts, § 498, p. 731; see *id.*, § 501, p. 735.) A disposition on "technical" or "procedural" grounds does not reflect on the merits for purposes of this requirement. (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751 [159 Cal.Rptr. 693, 602 P.2d 393].)

We may assume for present purposes that Desmarais's probate petition terminated in plaintiffs' favor with *Drummond II, supra,* H026373 and H026660, where we set aside the lower court's order favoring Desmarais and directed that court to take no further action in that matter. But as we later observed in *Drummond III, supra,* 149 Cal.App.4th at page 51, that disposition was only "an interim victory" on the ground that Desmarais had "attempted to pursue his claims in the wrong forum" because he was required, under the compulsory cross-complaint rule, to bring those claims in the court where plaintiffs' claims against him were already pending. Although we have found no case explicitly so holding, we see no reason to doubt that a termination based upon violation of the compulsory cross-complaint rule is a "technical" disposition rather than one "on the merits." (See *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592 [24 Cal.Rptr.3d 50] [dismissal for lack of standing].) This renders it flatly impossible for plaintiffs to establish a favorable termination *on the merits.*

Indeed counsel for plaintiffs seems to backhandedly concede the point, writing, "Admittedly, the law has probably evolved to such an extent that ordinarily maintaining a suit in the wrong court will not serve as an independent basis for the tort of malicious prosecution." Inexplicably, however, he goes on to assert that plaintiffs have "established a claim for the

malicious institution of a petition in the probate court . . . ." The ensuing discussion fails to substantiate this assertion. First plaintiffs say that the fee claim was maintained in the probate court for improper purposes: "to get a ruling from a friendly judge," "to avoid a jury trial," "to run up the fees the Drummonds would have to pay in connection with the administration of the estate," "to prolong the administration of the estate," and "to increase the fees of the [administrator]," who, they observe, "was and is a client of Desmarais'."

All of this might establish the element of malice (see pt. III.A, *post*), but it does not establish the separate requirement of a favorable termination on the merits. It might also establish the ulterior, extrinsic motive required to establish the distinct tort of *abuse of process*. (See 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 521, pp. 771–772.) But plaintiffs make no attempt to defend the complaint on the basis that it pleads, or could be amended to plead, such a claim. (See *Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 343, fn. 3 [269 Cal.Rptr. 429] ["An action for abuse of process is established only where the process is abused or misused for a purpose other than that for which it is designed."]; *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 40 [23 Cal.Rptr.2d 251] ["Simply filing or maintaining a lawsuit for an improper purpose . . . is not abuse of process."].)

The trial court did not err by granting the special motion to strike as to the cause of action for malicious prosecution based upon Desmarais's probate petition for fees.

III. *Malicious Prosecution*

A. *Malice*

We turn to the question whether plaintiffs showed a probability of prevailing on their claim that Desmarais committed malicious prosecution by charging *them* with malicious prosecution based upon their lodging of objections to the probate petition seeking his fees. Defendants contend that plaintiffs can establish none of the three elements of liability, i.e., malice, lack of probable cause, or a favorable termination on the merits.

■ The term "malice," which appears throughout the law of torts, almost always refers to a reprehensible mental state. Its particular meaning, however, varies from one context to the next. As an element of the tort of malicious prosecution, malice at its core refers to an improper *motive* for bringing the prior action. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874 [254 Cal.Rptr. 336, 765 P.2d 498] [referring to "the defendant's motivation" and "the subjective intent or purpose with which the defendant acted in

initiating the prior action"].) As an element of liability it reflects the core function of the tort, which is to secure compensation for harm inflicted by *misusing* the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement. Thus the cases speak of malice as being present when a suit is actuated by hostility or ill will, or for some purpose other than to secure relief. (See *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407 [69 Cal.Rptr.3d 561]; *Albertson v. Raboff* (1956) 46 Cal.2d 375, 383 [295 P.2d 405]; *Richter v. Neilson* (1936) 11 Cal.App.2d 503, 507 [54 P.2d 54].) It is also said that a plaintiff acts with malice when he asserts a claim with *knowledge of its falsity*, because one who seeks to establish such a claim "can only be motivated by an improper purpose." (*Albertson v. Raboff, supra*, 46 Cal.2d at p. 383.) A lack of probable cause will therefore support an inference of malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 [46 Cal.Rptr.3d 638, 139 P.3d 30]; cf. *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 675 [43 Cal.Rptr.3d 148] [lack of probable cause not sufficient by itself].)

Because malice concerns the former plaintiff's actual mental state, it necessarily presents a question of fact. (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 874.) Here there is ample evidence that Desmarais filed his suit with the requisite mental state. As will appear in the following part, a trier of fact could readily find that Desmarais acted without probable cause when he sued his former clients in tort, threatening them with punitive damages, merely for objecting to his fees. There is ample ground for an inference that in so acting he was motivated by hostility, ill will, spite, vindictiveness, and a desire to intimidate, rather than out of any genuine hope, or indeed intention, that plaintiffs would actually be found liable for malicious prosecution. In addition to numerous objective circumstances supporting such an inference, something approaching direct evidence is found in the declaration of Deborah Drummond, who attested, "[I]n November of 2006 following one of the hearings where my husband and sister-in-laws were unable to get any money from the estate because of Desmarais' blocking of any distributions to us, he began taunting us by following me and my mother-in-law and making comments like, 'Hey Ok, lend me some money[—]Ok, come on lend me some money' and laughing and snickering . . . . [¶] At an Order of Examination in 2003, Desmarais and William Gustafson said, in front of my children, that they were going to take our home. They asked to see title to cars that we had when they knew that the money in the estate was more than four or five times Desmarais' claim. [¶] . . . [¶] Desmarais and Gustafson also took actions such as demanding that we provide them with our minor children's e-mail addresses." (Paragraph numbers omitted.)

We have no doubt that a jury could infer malice from such evidence.

## B. *Probable Cause*

■ "Probable cause exists when a cause of action is, objectively speaking, legally tenable. [Citations.]" (*Videotape Plus, Inc. v. Lyons* (2001) 89 Cal.App.4th 156, 161 [107 Cal.Rptr.2d 1].) The claim need not be meritorious in fact, but only " 'arguably tenable . . . .' " (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1019 [85 Cal.Rptr.3d 838], original italics (*Paiva*).) "The presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case. [Citation.] The test . . . is whether any reasonable attorney would have thought the claim to be tenable. [Citation.]" (*Id.* at p. 1018; see *id.* at p. 1019 [" 'not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable' "].) Thus "[a] litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165 [80 Cal.Rptr.2d 66].)

■ If there is a dispute concerning the facts or beliefs on which the former plaintiff acted, that question must be resolved by a trier of fact. (*Videotape Plus, Inc. v. Lyons, supra,* 89 Cal.App.4th at p. 161 [probable cause is a question of law unless the former plaintiff's "knowledge and belief" are disputed].) It is a question of law for the court, however, whether the facts found support a tenable claim. (*Paiva, supra,* 168 Cal.App.4th at p. 1018.)

The question here is whether the evidence of record would support a finding that when Desmarais instituted or maintained his malicious prosecution suit, he either "relie[d] upon facts which he ha[d] no reasonable cause to believe to be true," or was pursuing a theory that was "untenable under the facts known to him." (*Sangster v. Paetkau, supra,* 68 Cal.App.4th at pp. 164–165.) We think a jury could easily conclude that, whatever Desmarais might reasonably hope to prove about the other elements of his claim, he had no reasonable cause to believe that he could show his clients had acted with malice in objecting to his fees.

It will be recalled that malice for these purposes requires some reprehensible motivation for the suit, such as personal hatred or an improper objective. We see no competent suggestion of any such motivation anywhere in this record. Desmarais's complaint charged plaintiffs with malice in only the most conclusory, boilerplate terms, stating that they "acted maliciously in bringing the above-mentioned action against plaintiff in that their motive and purpose was to wrong plaintiff by denying him attorney's fees to which he was entitled pursuant to their fee agreement with him and the November 1,

1999 judgment approving that fee agreement by, among other things, falsely claiming that the fee agreement was unconscionable and was procured by plaintiffs' [*sic*] fraud, breach of fiduciary duty and professional negligence and abandonment of his representation." Stripped of legal conclusions this allegation states only that plaintiffs brought their action to deny Desmarais fees to which they claimed he was not entitled. Doubtless this was indeed the purpose of their probate objections, but there is nothing improper about it. Later the complaint sets out a lengthier boilerplate allegation of malice in connection with the plea for punitive damages, but the malice required in that context is a different kind than concerns us here, and none of the boilerplate language there comes any closer to suggesting a genuine factual basis to suppose that plaintiffs brought their suit for any reason other than to enforce rights they believed they had.

A fact finder could thus find that Desmarais did not believe his clients had acted with malice when they objected to his fees. That finding would support, indeed, it would virtually dictate a finding that he himself lacked probable cause to sue them for malicious prosecution based on that conduct.

Defendants attempt to raise a categorical bar to such findings based upon the proposition that the ultimate defeat of *plaintiffs'* claims *against Desmarais* conclusively established probable cause for his malicious prosecution action. They state, "Since Appellants have failed to prove that their Objections were terminated in their favor and were asserted with probable cause, they have failed to meet their burden to prove that the *Desmarais v. Drummond* malicious prosecution action lacked probable cause . . . ." This is a non sequitur. Desmarais's complaint was brought without probable cause unless he reasonably believed that he could make a tenable case for *each* of the elements necessary to prevail. A man does not plead a tenable claim for battery merely because he believes that someone touched his body. He must also believe that the touching was harmful or offensive, *and intentional.* Likewise Desmarais did not plead a tenable malicious prosecution claim merely because he believed, if he did, that plaintiffs lacked probable cause to object to his fees. He had to also believe that they lodged those objections maliciously. The mere fact that he ultimately defeated their objections will not categorically sustain such a belief, or defeat an inference that it was lacking.

Indeed, events long after his complaint was filed and dismissed can have *no logical bearing* on the question of probable cause, because the essence of that element is the tenability of Desmarais's claims based upon his knowledge and belief *at the time he filed them.* As we have already noted (see pt. II, *ante*), the ultimate disposition of plaintiffs' objections precludes *plaintiffs'* maintenance of a malicious prosecution suit arising out of them. But it does

so by precluding a finding of a termination on the merits in their favor. It can have no bearing on the tenability of *Desmarais's* claim for malicious prosecution. (See *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th 260, 295 [diaries procured after suit filed "could not have provided [former plaintiffs] with probable cause for filing the action and naming [current plaintiff] as a defendant in it" (fn. omitted)].)

■ Defendants seem to argue that their ultimate success on the original dispute establishes that *plaintiffs* lacked probable cause to object to Desmarais's fees, and that from the lack of probable cause, malice may be inferred. But the first premise is wrong, and the inference defendants would draw from it is unsound. The mere fact that a party loses a lawsuit does not establish that he lacked probable cause to bring it.

Indeed the grounds on which Desmarais defended and ultimately defeated plaintiffs' claims—which we have just had occasion to review in connection with *Drummond IV, supra,* H030601—strongly indicate that plaintiffs' objections *were* tenable. Their ultimate failure appears to have been accomplished through arguments having little bearing on their *apparent* merit. Thus one of the claims of breach was that Desmarais calculated his fees against the pretax estate in violation of contract language providing for calculation against the "net amount recovered." (*Ibid.*) A major defense to this claim, and one the jury may well have sustained in preference to Desmarais's other chief argument on the subject, was that, *assuming the contract was breached* in this respect, any harm to plaintiffs was offset by tax benefits directly resulting from the breach. (*Ibid.*) This concession of a breach of the contract, however hypothetical or contingent it may have been, makes it all but impossible to conclude that plaintiffs' objections lacked colorable merit. And while the jury apparently did not find sufficient fraud in the inducement, or other misconduct, to vitiate the fee contract, neither did it find Desmarais to have been innocent of wrongdoing. On the contrary, it expressly found that he had breached his fiduciary duties to plaintiffs—but, again, that plaintiffs suffered no harm as a result. (*Ibid.*) Such a verdict falls far short of establishing that the rejected claims were brought without probable cause, or that Desmarais believed they were when he filed and maintained his suit.

### C.   *Favorable Termination on the Merits*

Although plaintiffs presented sufficient evidence to establish the elements of malice and lack of probable cause, the same cannot be said of the element of a favorable termination on the merits. As we have already noted, that element requires that the termination of the prior action " 'reflect on the merits' " and "tend[] to indicate [the former defendant's] innocence of or lack of responsibility for the alleged misconduct." (5 Witkin, Summary of Cal.

Law, *supra*, Torts, § 498, p. 731; see *id.*, § 501, p. 735.) Thus, "[a] voluntary dismissal on technical grounds, such as lack of jurisdiction, laches, the statute of limitations or prematurity, does not constitute a favorable termination because it does not reflect on the substantive merits of the underlying claim. [Citations.]" (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 894 [60 Cal.Rptr.2d 815].)

Desmarais filed a declaration asserting that he dismissed the action for financial reasons. A fact finder would be entitled to find that declaration unworthy of belief for a large number of reasons, including that (1) he was representing himself and thus appeared to be incurring no attorney fees; (2) he waited three and a half years to dismiss the action, during which time he went to some effort to defend it against repeated motions to dismiss; (3) he voluntarily dismissed it 10 days after this court denied rehearing in *Drummond II, supra*, H026373 and H026660, which effectively sounded a death knell for his complaint; (4) his declaration was exceptionally vague about what exactly constituted his supposed motivating discovery, and when it was made; and (5) the declaration appeared to have been adapted from an unpublished opinion of this court, which it copied verbatim in substantial part, although the quoted language was a mere description or summary of the evidence in that case.[5]

The nebulousness and implausibility of the claimed financial motive for dismissal distinguishes this case from *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043 [61 Cal.Rptr.3d 434], on which Desmarais primarily relies. The other case he cites on this point, *Oprian v. Goldrich, Kest & Associates, supra*, 220 Cal.App.3d 337, is even farther afield, as the malicious prosecution defendant there had not actually dismissed his complaint voluntarily, but had merely suffered its dismissal, by order of an appellate court, based on counsel's stated supposition that his client—whose authority to dismiss he appeared to lack—would probably be willing to submit to dismissal if his opponent's cross-action were also

---

[5] Desmarais declared: "On July 29, 2005, I voluntarily dismissed without prejudice my complaint in Case No. 1-02-CV-805498 because (1) I wanted *to avoid further time and expense associated with litigation that had been ongoing for more than one year, and* (2) the passage of time had shown that the increase in my professional liability insurance premiums that had resulted from the Drummonds' lawsuits against me amounted to less than $10,000.00 and, therefore, my lawsuit was of *limited potential benefit*. I did not dismiss my lawsuit because of any lack of merit to it." (Italics added.)

In our unpublished opinion, which we refrain from identifying under the constraint of California Rules of Court, rule 8.1115(a), the following language appears: "In its motion to dismiss, Tenant submitted evidence that its decision to dismiss the prior suit was based upon (1) its desire *to avoid further time and expense associated with litigation that had been ongoing for more than one year, and* (2) the likelihood that the lease would expire only a short period of time after the anticipated trial date, thereby rendering the lawsuit of *limited potential benefit*." (Italics added, fn. omitted.)

dismissed. Indeed the sui generis nature of the proceedings there renders that case of debatable pertinence in any less extraordinary circumstance.

In any event, a fact finder would be entitled to flatly disbelieve Desmarais's declaration based upon its own contents and surrounding circumstances. That declaration therefore cannot establish, as a matter of law, that plaintiffs would be unable to establish the element of favorable termination.

■ At the same time, if we disregard Desmarais's declaration and adopt the far more likely premise that his dismissal of the complaint was motivated by our decision in *Drummond II, supra*, H026373 and H026660, we are forced to conclude that the dismissal was on "technical grounds" for purposes of the principles described above. There is little doubt that if the complaint had been dismissed *while the appeal was pending*, and on that ground, the dismissal would have been considered technical rather than substantive. This is because "[a] malicious prosecution action will not lie while an appeal from the judgment in the underlying action is pending." (5 Witkin, Summary of Cal. Law, *supra*, Torts, § 499, p. 734.) So long as the appeal is pending, the plaintiff cannot truthfully allege a *termination* of the action, and a malicious prosecution action is "premature." (*Friedman v. Stadum* (1985) 171 Cal.App.3d 775, 778–779 [217 Cal.Rptr. 585].) "[P]rematurity" is among the recognized "technical grounds" of disposition for purposes of malicious prosecution liability. (*Robbins v. Blecher, supra*, 52 Cal.App.4th 886, 893–894.)

The only question is whether a different view should prevail when, as here, the malicious prosecution complaint is not dismissed while the appeal is pending, but is held in abeyance during that time, and only dismissed after the appeal is resolved unfavorably to the plaintiff. It might be argued that, at that point, the complaint is no longer premature, but irreparably defective, at least where—as here—the disposition of the appeal effectively precludes the malicious prosecution plaintiff from establishing the element of favorable termination. A dismissal in those circumstances might be held to reflect sufficiently on the merits that a dismissal will no longer be deemed technical.

We reject this view because it exalts form over substance, would breed a wholly unnecessary multiplicity of actions, and is unfair to the malicious prosecution plaintiff, who has been placed in an awkward and potentially perilous position by the interaction of the statute of limitations, on the one hand, and the pendency of the appeal, on the other.

A cause of action for malicious prosecution accrues, and the statute of limitations begins to run, upon entry of judgment in the underlying action. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 555, p. 705.) The accrual of

a cause of action presupposes that all of the elements necessary to that cause of action have come into existence. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79], quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421] [statute of limitations ordinarily " 'begins to run upon the occurrence of the last element essential to the cause of action' "].) The law thus necessarily views the plaintiff as able to plead and prove, at the moment judgment is entered, a favorable termination of the underlying action, despite the pendency, or potential pendency, of an appeal. However, the filing of an appeal *tolls* the statute until the appeal is concluded. (3 Witkin, Cal. Procedure, *supra*, Actions, § 555, p. 705.) This means that the time between entry of judgment and filing of the appeal counts against the limitations period. (*Ibid.*) This obviously creates a trap for the unwary malicious prosecution plaintiff, who may either miscalculate or completely overlook this effect. (See, e.g., *Gibbs v. Haight, Dickson, Brown & Bonesteel* (1986) 183 Cal.App.3d 716, 722 [228 Cal.Rptr. 398] [affirming judgment for defendant on limitations defense].) A further hazard is posed by conflicting authorities as to when the tolling period ends. (See *ibid.* [tolling ended with denial of review by Supreme Court]; *Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330, 338 [248 Cal.Rptr. 341] [declining to follow *Gibbs* on this point; tolling ends upon issuance of remittitur].)

The filing of an appeal also operates, as we have noted, to render the malicious prosecution claim premature. In effect it suspends the plaintiff's erstwhile ability to plead and prove a favorable termination. Early cases indicated that the correct remedy was to *dismiss* the malicious prosecution complaint in the expectation that the plaintiff could refile it—as a new action—upon a favorable conclusion of the appeal. (*Friedman v. Stadum, supra*, 171 Cal.App.3d 775, 779; see *Merron v. Title Guarantee & Trust Co.* (1938) 27 Cal.App.2d 119, 122–123 [80 P.2d 740].) However it has since been held that the proper remedy is to stay the action. (*Feld v. Western Land & Development Co.* (1992) 2 Cal.App.4th 1328, 1335–1336 [4 Cal.Rptr.2d 23].)

This is a sound approach. An objection based on this kind of prematurity is in essence a plea in abatement, i.e., one that, "without disputing the justness of plaintiff's claim, objects to the place, mode, or time of asserting it . . . ." (*Ostrowski v. Miller* (1964) 226 Cal.App.2d 79, 87 [37 Cal.Rptr. 790].) The traditional remedy, if such a plea was sustained, was to dismiss the complaint without prejudice. (*Ibid.*) However, it is now settled that the correct remedy is to abate (stay) the action pending resolution of the condition giving rise to the plea. (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 792 [274 Cal.Rptr. 147]; *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 771 [25 Cal.Rptr.2d 192].) This treatment is more consistent with a sound procedural jurisprudence than was dismissal. So long as the action is stayed it is unlikely to impose any significant burden on

anyone. A stay permits the court to reserve jurisdiction and spares the plaintiff the hazards of correctly calculating the tolling period, and perhaps recalculating it every time an arguable break in tolling occurs. (See *Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc, supra,* 202 Cal.App.3d at p. 337 [noting potential, under alternative rule, for circumstances that could end and then resume tolling period].)

Nor is there any sound reason to expose the plaintiff to the hazards of the statute of limitations when he has fully complied with its purposes by acting promptly to notify the defendant of his claim and to set in motion its adjudication. Nor is there any reason to burden the court with the duplicate filing—or the plaintiff with the duplicate filing fee—that will typically result if the complaint is dismissed, the appeal is resolved in the plaintiff's favor, and the complaint is then refiled. The only discernible harm done to the defendant by staying the action is that he forfeits his chance of disposing of the case on limitations ground (in the event the plaintiff trips up). That is not an interest the law need take pains to protect.

The question before us is whether a malicious prosecution plaintiff who takes advantage of this simple and straightforward procedure should be viewed as thereby staking on the outcome of the appeal his own future exposure to liability for malicious prosecution. That would be the effect of holding that his voluntary dismissal of the complaint after an *unfavorable* appellate decision operates as a termination on the merits in favor of his opponent. Had the plaintiff dismissed his complaint while the appeal was pending, there is little question that his action would have been terminated on technical grounds and therefore would not sustain a return suit by his adversary for malicious prosecution. The only reason to expose him to such a suit would be purely *conceptual,* i.e., his action is no longer premature, but is now marred by a defect of substance, which is that the previously existing favorable termination has in effect been erased. But this is an insufficient ground on which to adopt such an approach. Sound procedural concepts are the servants of justice—not its master. Justice is rarely if ever served by needless complexity, however elegant, in the fashioning of rules—particularly procedural ones.

■ We conclude that when a malicious prosecution action is stayed on the ground that an appeal from the underlying judgment is pending, and the appeal is thereafter resolved adversely to the malicious prosecution plaintiff, a voluntary dismissal by him in response to that event is a technical disposition and not a termination on the merits in favor of his opponent.

■ It follows that Desmarais's voluntary dismissal in the wake of *Drummond II, supra,* H026373 and H026660, was a technical disposition, not

a termination on the merits, and therefore will not support plaintiffs' malicious prosecution suit based upon his own malicious prosecution complaint.

The record affords no basis to conclude that plaintiffs could have any greater success against the other defendants than they would have against Desmarais. The trial court therefore acted properly in granting the special motion to strike in its entirety.

### DISPOSITION

The judgment is affirmed.

Premo, J., and Elia, J., concurred.

On August 18, 2009, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 10, 2009, S176328.