Filed 3/4/13  Glavinovich v. Naqvi CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN L. GLAVINOVICH, | |
| Plaintiff and Appellant, | G046722 |
| v. | (Super. Ct. No. 30-2011-00516101) |
| SYED NAQVI, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Voss, Silverman & Braybrooke, David C. Voss, Jr., and Andrew T. Schoppe for Plaintiff and Appellant.

Horwitz, Cron & Armstrong and John R. Armstrong for Defendant and Respondent.

*          *          *

This is one of a number of appeals from judgments after orders granting defense motions pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute,[2] in a malicious prosecution action by plaintiff John L. Glavinovich. All of the anti-SLAPP motions relate to the same underlying case, *Sweidan v. Orange County Physicians Investment Network, LLC* (Super. Ct. Orange County, 2013, No. 30-2009-00122142).

In this case, Glavinovich appeals the trial court's decision to grant the anti-SLAPP motion filed by defendant Syed Naqvi. Because we find that Glavinovich failed to meet his burden to establish that his malicious prosecution case against Naqvi had even a minimal chance of prevailing on the merits, we affirm.

I

FACTS

A. *The Underlying Case*

Orange County Physicians Investment Network (OCPIN) was a Nevada limited liability company formed by Glavinovich and approximately 19 others, including Naqvi. Its primary purpose was as a holding company for its members' funds to be used for the acquisition of stock in a company called Integrated Healthcare Holdings, Inc. (Integrated). This company, an investment entity, purchased four hospitals in the Orange County area from Tenet Healthcare Corporation.

In April 2008, Glavinovich was elected as a manager of OCPIN, along with Anil V. Shah, who had held that position since 2005. According to Glavinovich's complaint, acquiring Integrated stock was a "complicated and difficult affair," resulting in separate litigation that is apparently still arguing.

---

[1] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

In early 2009, certain members of OCPIN (not including Naqvi) began an effort to remove Shah and Glavinovich as managers. Glavinovich later alleged such actions were illegitimate and interrupted OCPIN's business operations. The dissident members (the OCPIN plaintiffs) then instituted the underlying case (the OCPIN litigation).[3]

The OCPIN litigation began as a derivative action alleging breach of fiduciary duty and seeking declaratory and injunctive relief. According to Glavinovich, a demurrer was sustained. The first amended complaint, which included Naqvi as a plaintiff, reframed the case as a direct action on behalf of the OCPIN against Shah, Glavinovich, and a number of other individuals. The first amended complaint, running over 100 pages, alleged 21 causes of action against Glavinovich and other defendants, including Shah and various accountants and attorneys. The first amended complaint alleged causes of action against Glavinovich for breach of fiduciary duty, constructive fraud, injunction, professional negligence, accounting, and declaratory relief.

Although the disposition of the first amended complaint as to Glavinovich is not completely clear, a second amended complaint followed. That complaint stated that "[a]ll allegations related to GLAVINOVICH are, upon information and belief . . . ." Prior to a hearing on demurrers and motions to strike the second amended complaint, in February 2010, Naqvi, at his request, was dismissed from the case as a plaintiff. Glavinovich's demurrer to the second amended complaint was subsequently overruled in part and sustained in part, with leave to amend granted. Ultimately, after discovery and multiple further rounds of pleadings, Glavinovich's demurrer to the sixth amended

---

[3] At different points, the members were represented by Kenneth Catanzarite of The Catanzarite Law Corporation, Vincent W. Davis of The Law Office of Vincent W. Davis and Associates, and Hewitt Wolensky LLP. All were later named in the malicious prosecution action.

3

complaint was sustained as to all causes of action. The court noted that the OCPIN plaintiffs had not "com[e] even close" to stating a cause of action against him.

*B. The Malicious Prosecution Case*

After he was dismissed from the OCPIN litigation, Glavinovich filed the instant action for malicious prosecution against the OCPIN plaintiffs and their attorneys in the underlying case. The first amended complaint, filed in December 2011, alleged malicious prosecution and intentional infliction of emotional distress.

In response, the defendants, including Naqvi, filed anti-SLAPP motions. Naqvi argued there was no evidence of actual or implied malice sufficient to sustain a claim for malicious prosecution, and that he had relied on the advice of counsel in both joining and dismissing himself from the underlying case. In opposition, Glavinovich asserted that "Naqvi is no less liable than his fellow OCPIN Defendants . . . for having initat[ed] this whole affair without probable cause."

The court ruled on motions by both Hewitt Wolensky LLP[4] and Naqvi on the same day. In granting the motion as to the law firm, the court concluded that Glavinovich had not established lack of probable cause or malice with respect to the malicious prosecution claim, and also found that the intentional infliction of distress cause of action was barred on multiple grounds.[5] The court used the same reasoning as to Naqvi, adding also that Naqvi had demonstrated a good faith reliance on the advice of counsel, which amounted to probable cause. Glavinovich now appeals.

---

[4] To the extent Glavinovich addresses his claims against Hewitt Wolensky LLP in this appeal, purporting to appeal from the *order* granting the motion to strike, we defer those issues to the appeal from the *judgment*, G046723.

[5] Glavinovich does not address his intentional infliction of emotional distress claim on appeal, and we therefore deem it abandoned.

4

II

DISCUSSION

*A. Statutory Framework*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), specifies the type of acts included within the statute's ambit. An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Courts engage in a two-step process to resolve anti-SLAPP motions. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains

5

were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

"'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.) To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105 (*Cole*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Glavinovich "must produce evidence that would be admissible at trial. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

The first step of the anti-SLAPP analysis is readily satisfied here, as it is in nearly all claims for malicious prosecution. (See *Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 734-735.) "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition. [Citations.] ""'[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.'"" [Citations.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) "Under these accepted principles, a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike. [Citation.] The essence of the [plaintiffs'] malicious prosecution claim is that the plaintiff in the underlying action . . . filed litigation that was improper because it was allegedly filed with a malicious motive and without probable cause. This claim 'aris[es] from' the defendant's constitutionally protected petitioning activity, and therefore is subject to the anti-SLAPP statute. [Citation.]" (*Id.* at p. 1087-1088; *see also Cole*, *supra*, 206 Cal.App.4th at p. 1105.) We therefore turn to the question of whether Glavinovich has established the requisite probability of prevailing on his claim.

## B. Malicious Prosecution

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292.)

We examine the evidence Glavinovich produced in the trial court to determine if his claim passes muster under the anti-SLAPP statute. His argument on the likelihood that he would prevail on the merits was brief, comprising less than two full pages. With respect to probable cause, he relied entirely on excerpts from the deposition testimony of two of the OCPIN plaintiffs, Ajay Meka and Jacob Sweidan, for the

7

proposition that the OCPIN plaintiffs had no facts to support their claims against Glavinovich. With respect to malice, he stated: "Glavinovich can and will prove this element by showing that the [causes of action] and other factually unsupported claims were in fact rooted in their desire for greater control of the OCPIN entity itself, as evidenced in the highly-contentious proceedings of the April 2009 shareholder meeting repeatedly referenced in all of the Underlying Complaints and even in these moving papers. While greater control of a business entity may be a legitimate end, bringing baseless and legally untenable lawsuits in order to obtain such control is not a legitimate means to that end."

In support of his motion, Naqvi filed his own declaration. It stated that in the summer of 2009, he met with Meka's lawyer, Catanzarite, who told him that the OCPIN plaintiffs' claims against Glavinovich were meritorious. Based on those statements, he agreed to join the lawsuit and was named as a plaintiff in the first amended complaint. After Glavinovich partially succeeded in attacking the first amended complaint, he sought a second opinion from another attorney, and based on that opinion, dismissed himself from the lawsuit. He stated he never had the intent to abuse the courts or to vex, annoy or injure Glavinovich.

With regard to the probable cause element, Naqvi relied on the defense of advice of counsel. "Reliance upon the advice of counsel, in good faith and after full disclosure of the facts, customarily establishes probable cause. [Citations.]" (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1556.) Glavinovich argues Naqvi cannot rely on this defense because Naqvi did not "state[] all of the facts to Catanzarite or to any other attorney." But from Naqvi's declaration, it appears that Naqvi did not have anything to disclose. Glavinovich has certainly not demonstrated otherwise, and we therefore conclude Naqvi could rely on the defense of advice of counsel and would probably prevail at trial with such a defense.

Even if Glavinovich's evidence could be held sufficient with regard to probable cause, it falls far short on the issue of malice. "The 'malice' element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*).)

Glavinovich argues that malice can be inferred from nothing more than the lack of probable cause, but the lack of probable cause alone is insufficient. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452.) Were it otherwise, the malice requirement would simply disappear. "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence." (*HMS Capital, Inc. v. Lawyers Title Co.*, *supra,* 118 Cal.App.4th at p. 218.) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence." (*Downey Venture*, *supra*, 66 Cal.App.4th at p. 498 fn. omitted.)

"[T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture, supra,* at pp. 498-499; see also *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225.) While malice may be inferred from circumstantial evidence such as the lack of probable cause, such evidence must be "supplemented with proof that

9

the prior case was instituted largely for an improper purpose." (*Cole*, *supra*, 206 Cal.App.4th at p. 1114.)

Moreover, we keep in mind that malicious prosecution is a "disfavored action." (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 566.) "[T]he elements of [malicious prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) We are therefore entirely disinclined to read out the malice requirement from a malicious prosecution cause of action, as Glavinovich would have us do.

It is easy to see why Glavinovich would prefer we did so — he simply offers no facts from which malice on Naqvi's part can be reasonably inferred.[6] Unlike the cases he cites (see, e.g., *Zamos v. Straud* (2010) 32 Cal.4th 958), the facts here do not demonstrate that Naqvi actually knew the case lacked probable cause. The deposition testimony of Meka and Sweidan does not mention Naqvi, nor can we infer from their testimony what Naqvi knew or did not know. He offers nothing to establish that Naqvi harbored actual malice toward him, or any improper purpose. Based on the admissible evidence relating to Naqvi, which is sparse and largely comes from his own declaration, Glavinovich has failed to meet his burden to demonstrate malice, and therefore the probability of success on his malicious prosecution claim. Thus, Naqvi's anti-SLAPP motion was properly granted by the trial court.

---

[6] For the first time in his reply brief, Glavinovich argues that Naqvi aided and abetted the malicious prosecution of the other defendants, and was therefore equally liable. While we deny Naqvi's motion to strike this argument from Glavinovich's brief, we reject it on its merits. "Aiding and abetting a tort requires knowingly assisting the wrongful act. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1106.) Glavinovich does not offer any evidence of aiding and abetting other than Naqvi's mere participation in the underlying case.

III

DISPOSITION

The judgment is affirmed.  Pursuant to section 425.16, subdivision (c)(1), Naqvi may file the appropriate motion for attorney fees with the trial court.  He is also entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.