Filed 12/29/22  Peixoto v. Dudash CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

| | |
|---|---|
| LEAH PEIXOTO et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>    v.<br><br>GEORGE DUDASH et al.,<br><br>    Defendants, Cross-complainants and Appellants. | D079550<br><br><br><br>(Super. Ct. No. 37-2019-00061944-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

George Dudash and Lu Dudash, in pro. per., for Defendants, Cross-complainants and Appellants.

No appearance for Plaintiffs, Cross-defendants and Respondents.

## INTRODUCTION

Two couples who owned neighboring parcels of real property could not agree whether one of them had the right to install an address marker and decorative landscaping on the side of a private easement road used to access

their properties.  This underlying dispute led to more conflicts and culminated in the filing of a complaint followed by a cross-complaint.

The couples are no longer neighbors.  The couple that installed the address marker and landscaping removed them, dismissed their complaint, and moved away to extricate themselves from the ongoing contention.  The other couple took their cross-claims to a bench trial.  They lost, and now appeal, arguing the trial court's decision was not supported by substantial evidence.  We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2019, 73-year-old Leah Peixoto and her 77-year-old husband, Eduardo Peixoto, owned and lived on a parcel of real property in a rural area of unincorporated San Diego County near Escondido.  George Dudash and his wife, Lu Dudash, owned and lived on the parcel of real property immediately north of the Peixotos' property.

The Peixoto and Dudash properties were accessed from the west by a long private easement road that ran east-west along the boundary of two other properties.  The easement area was 40 feet wide and was the combination of two adjoining 20-foot-wide easements granted to the Peixotos and Dudashes "for road and public utility purposes[.]"  The northern 20-foot-wide easement ran along the southernmost portion of a parcel owned by Bob Stanley.  The southern 20-foot-wide easement ran along the northernmost portion of a parcel owned by Robert Curry.[1]  Although the total easement area was 40 feet wide, the paved road was less than 40 feet wide.

---

[1]     Two documents that were represented to be legal instruments conveying the easements to the Dudashes and Peixotos were admitted in evidence at trial.  One of these documents is incomplete because it is only the "Exhibit A" attachment describing rights with respect to various parcels of real property; it lacks the actual instrument of conveyance to which it was

2

A person driving east on the road toward the Dudash and Peixoto properties would encounter the Dudash property first, on the left. As the road approached the Dudash property, it forked to the left and right. A person who drove to the left would immediately pass through the entrance to the Dudash property, which had a circular private driveway leading to the Dudash residence. A person who drove to the right would descend down a slope leading to the Peixoto property, which was farther down the road and to the right. The road ended at the Peixoto property.

The Dudashes and Peixotos had a number of conflicts that appeared to originate with disagreements over their use of the easement burdening the Curry property (easement). The Peixotos installed a small stone address marker surrounded by a cluster of three or four decorative palm trees. They placed these items just west of the fork in the road, south of the paved road and north of the southern boundary of the easement (from the perspective of a person driving east toward the Dudash and Peixoto properties, on the right side of the road, just before the fork in the road). George Dudash, who apparently wanted to construct a turn-around area through the patch of land occupied by the address marker and trees, threatened to bulldoze the items away. He also took steps to relocate the Dudash mailbox to a position south

<hr>

attached. The other document is a 1983 grant deed conveying to George M. Dudash and Deloris F. Dudash certain rights with respect to various parcels of real property. (The record does not establish whether Deloris F. Dudash is the same person as Lu Dudash.) To identify the parcels of real property referenced by these documents, the parties relied on plot maps apparently obtained from a realtor. At all times in this case, the parties agreed, and the trial court accepted, that they owned easements running over the Stanley and Curry properties and that their rights as easement owners pertained to the same 40-foot-wide strip of land. For purposes of this appeal, we assume without deciding that this is so.

3

of the road, just west of the Peixotos' address marker (such that a person driving east would encounter the Dudash mailbox first, on the right). The Peixotos objected to the plan to move the Dudash mailbox to this location.

Out of these and other disputes, the present lawsuit arose.

## I.

### *The Parties' Pleadings*

A.   *The Peixotos' Complaint*

In November 2019, the Peixotos, who were then represented by counsel, filed a complaint against the Dudashes in superior court. They asserted causes of action for declaratory relief, intentional infliction of emotional distress, and negligent infliction of emotional distress.

In their cause of action for declaratory relief, the Peixotos sought a judicial declaration that they had the right to place a small stone base (the address marker) and landscaping (the palm trees) in the easement to the side of the paved road, and that the Dudashes did not have the right to place or maintain their mailbox in the easement. They alleged an actual controversy existed with respect to these issues, including because the Dudashes had threatened to "bulldoze or otherwise destroy/remove" the landscaping and place the Dudash mailbox in the easement.

The second cause of action for intentional infliction of emotional distress was asserted by Eduardo Peixoto, described as "an elderly man who suffers from dementia," against George Dudash. It was supported by allegations that George Dudash had shouted at Eduardo Peixoto "in a rude, violent, and insolent manner and made verbal threats, including, but not limited to, threatening to sue him with the knowledge of [his] special susceptibility to being frightened, confused, and otherwise emotionally upset," purposely causing Eduardo Peixoto to suffer mental anguish,

4

emotional and physical distress. The third cause of action for negligent infliction of emotional distress was also asserted by Eduardo Peixoto against George Dudash, and was supported by an allegation that George Dudash knew, or should have known, his conduct "as alleged herein" would cause Eduardo Peixoto severe emotional distress.

In September or October 2020, the Dudashes, appearing as self-represented litigants, filed a demurrer to the complaint, which was denied. In November, they filed an answer to the complaint. In February 2021, the Peixotos voluntarily dismissed their complaint without prejudice.

B.     *The Dudashes' Cross-Complaint*

In April 2021, the Dudashes filed an amended cross-complaint (cross-complaint) that asserted five causes of action: (1) "property obstruction"; (2) "vandalism"; (3) nuisance behavior; (4) malicious prosecution; and (5) intentional infliction of emotional distress.

In the first cause of action for "property obstruction," the Dudashes alleged the Peixotos' address marker and palm trees obstructed their use of the easement, "blocking others from using that portion of the property, including [the Dudashes'] efforts to develop and utilize the area for road purposes."

The second cause of action for vandalism was based on an alleged incident involving the Dudashes' mailbox post. The Dudashes alleged they sought to relocate their mailbox to the easement "to a position at a turn around area . . . closer to [the Dudash] property." Leah Peixoto allegedly parked her minivan "against a freshly installed mail box post, bending the structure."

In support of their third cause of action for "nuisance behavior," the Dudashes alleged the Peixotos had harmed them by committing the following

acts: they installed exterior lights aimed at the Dudash home; they installed a " 'spite mailbox' " (capitalization omitted) on the opposite side of the road from the address marker; they left Eduardo Peixoto's vehicle parked in the easement area for 21 days; and Leah Peixoto stood in front of a backhoe driven by George Dudash, allegedly interrupting him as he was moving the Dudash mailbox and placing boulders next to it.

In support of their fourth cause of action for malicious prosecution, the Dudashes alleged the Peixotos' complaint was baseless and brought wrongfully, and they became the prevailing parties when the Peixotos voluntarily dismissed it. The fifth cause of action for intentional infliction of emotional distress was based on allegations the Peixotos' "wrongful conduct" had caused the Dudashes to suffer "severe emotional and financial distress."

In their prayer for relief, the Dudashes requested special and general damages in specified amounts totaling over $150,000, as well as punitive damages.

## II.

### *The Bench Trial*

The causes of action in the cross-complaint were tried in a bench trial that lasted less than one day. Both sides were self-represented at trial.

A.    *The Dudashes' Evidence*

Curry, George Dudash, and Charles Rivers (a friend of George Dudash) testified on behalf of the Dudashes.[2]

---

[2]    Because the trial was not reported by a court reporter, the Dudashes elected to use a settled statement as the record of the oral trial proceedings. A settled statement is "a condensed narrative of the oral proceedings that the appellant believes necessary for the appeal." (Cal. Rules of Court, rule 8.137(b)(1).) To the extent our summary of the trial testimony includes quotations, we are quoting the settled statement—meaning we are quoting a

1.    *Robert Curry*

Curry had owned his property since 1974 and it was vacant.  He resided elsewhere and rarely visited it.  His last visit was sometime before the Peixotos' address marker and landscaping were installed.  Curry had paid an attorney $3,600 to compel the Peixotos to remove the "obstacles."[3]  George Dudash asked Curry if he believed the Peixotos' "obstructing [of] the easement" was a private nuisance.  Curry responded that it "cost him time and money to get the problem corrected, so it was not a pleasant experience."

2.    *George Dudash*

George Dudash gave an oral "case presentation"[4] (capitalization and emphasis omitted) that relied to a large extent on exhibits.  Several of these exhibits were aimed at establishing that the Peixotos' address marker and

---

narrative summary of what was said, rather than a transcription of the witnesses' actual words.

[3]    Throughout this action, the Dudashes have referred to the address marker and trees as the "obstacles."

[4]    The settled statement contains summaries of what it refers to as George Dudash's "opening remarks" and "case presentation."  (Capitalization and emphasis omitted.)  We do not summarize his "opening remarks" because they were, in effect, an opening statement describing his view of what the evidence would show, and an opening statement is not evidence.  (7 Witkin, Cal. Proc. (6th ed. 2022) § 155 [opening statement is not evidence].)  His case presentation, although not described as testimony, appeared to constitute his testimony as a party witness, and we treat it as such.  In giving this presentation, he relied on numerous trial exhibits.  To the extent trial exhibits have been transmitted to us as part of the record on appeal, for the most part they are not organized or labeled in a manner that corresponds to the page numbers, index numbers, or exhibit letters that were used to identify them at trial.  At times, this makes it difficult to follow the case presentation.  We have used our best efforts to summarize the relevant portions of the case presentation despite this difficulty.

7

trees had been located within the boundaries of the easement before they were removed. The exhibits included diagrams and aerial photos on which lines were drawn to represent the boundaries of the easement and surrounding properties, although it was not apparent who added the lines to the aerial photos, who prepared the diagrams, or how they were prepared.

At least two of these diagrams depicted the Peixotos' address marker and trees (the "[o]bstructed [a]rea") as an oval south of the paved road, just north of the southern boundary of the easement. In one diagram, a circle labeled "PROPOSED END of ROAD U-TURN AREA" was drawn over the road just west of the entrance to the Dudash property. The "[o]bstructed [a]rea" was depicted just inside the perimeter of this circle. The diagram thus appeared to show that the Peixotos' address marker and trees were in an area of the easement that the Dudashes at some point had proposed to use as a turn-around or U-turn area. George Dudash stated he and his wife "claim[ed]" the Peixotos "unreasonably interfered with our full use and enjoyment of the easement" by planting trees and installing the stone address marker in the easement.

As for the alleged vandalism, the Dudashes' trial exhibits included photos that appeared to show Leah Peixoto's minivan parked next to the relocated mailbox post. George Dudash stated the photos were "evidence of the vandalism perpetrated on us." He provided a sheriff's report documenting his complaint to law enforcement about Leah Peixoto parking her minivan next to the post. The report stated Leah Peixoto's vehicle had made contact with the post and concluded she had committed an act of vandalism.

George Dudash asserted the Peixotos had engaged in "outrageous" behavior that included "[u]sing high powered lights aimed at our property

from dusk to dawn every day to harass and annoy us"; "[i]nstall[ing] a second 'Spite Mailbox' on the easement property, without seeking permission from ANY property owner first"; and "[i]nterfering with the remedial efforts of our relocation of our second mailbox by physically CONFRONTING me while operating a backhoe, standing in front of it, and then blocking the easement again with a silver sedan for more than two weeks." As evidence of these events, he offered a montage of still photographs that showed an older man and woman standing near the road, apparently in the area of the address marker. He played video clips that he described as showing Leah Peixoto confronting and harassing him about the Dudashes' mailbox. He also offered a photograph of the " 'spite mailbox,' " which was located on the north side of the paved road opposite the Dudashes' relocated mailbox. He stated, "there was no public benefit to the Peixoto's [*sic*] conduct."

Turning to the subject of the Peixotos' allegedly malicious lawsuit, he asserted that following dismissal of the complaint, "particularly the claims of intentional infliction of emotional and physical harm on a man suffering from dementia, we are no longer worried about a massive economic ruling against us, based on lies, but we still have out of pocket expenses to recover and we seek general and punitive damages as well, regarding the other claims in our Cross-complaint."

3.   *Charles Rivers*

Rivers had known George Dudash for 20 years and had never seen him lose his temper or yell at anyone. Rivers was present on one occasion when Leah Peixoto confronted George Dudash about the use of the road; George Dudash did not yell, but Leah Peixoto got upset when he refused to talk to her.

B.    *The Peixotos' Evidence*

Casey Slevin (the Peixotos' son), Cynthia Steiger (a friend and business partner of Leah Peixoto), and Leah Peixoto testified on behalf of the Peixotos.

1.    *Casey Slevin*

Slevin did not reside at the Peixoto residence, but he was "intimately familiar" with his parents' case. His parents did not want any money from George Dudash; they only wanted the ability to beautify their property and surroundings.

Slevin stated that George Dudash had harassed his parents by placing posts and an " 'aircraft ladder' " between their two properties. The Dudashes also had a camera on their property aimed at the Peixotos' driveway, monitoring the Peixotos' comings and goings, which was "very oppressive to his parents and caused them anxiety." Slevin said his parents had intended to live in their home forever, but they sold their home to get away from George Dudash "as a final act of capitulation to his alleged abuse of them."

2.    *Cynthia Steiger*

Steiger, a friend and business partner of Leah Peixoto, considered Leah Peixoto to be an expert at conflict resolution and had witnessed many instances in which she had resolved conflicts. She testified George Dudash had harmed the Peixotos by placing debris next to his fence. She said George Dudash was "a horrible person" and that she "had visited the Peixotos' property and . . . their property was beautiful and the Dudash property was a mess." When asked why she believed George Dudash to be a horrible person, she responded that she "was familiar with the emails between Mr. Dudash and the Peixotos."

3. *Leah Peixoto*

The settled statement provides the following summary of Leah Peixoto's testimony:

"The Peixotos have sold their home and moved away to a new location. They moved because of the contention caused by George Dudash. They couldn't deal with the contention any more, and decided to move to get away from George Dudash. [¶] . . . [¶]

"The Peixotos attempted to beautify the entry to their property by putting in decorative landscaping and an identification marker/monument near the entrance to their property. These items were not on the [Dudashes'] property and did not interfere with the [Dudashes'] use of their own property or the easement road. For reasons that are unknown to the Peixotos, George Dudash objected to these items and threatened to bulldoze them away.

"The Peixotos spent quite a bit of money to pay for a new fence. Without notice or warning, George Dudash took down a significant portion of the fence. When the Peixotos asked George Dudash to return the fence pieces to the Peixotos, [he] refused.

"George Dudash and Leah Peixoto disagreed about the location of a proposed new mail box that [he] wanted to install. Leah [Peixoto] thought the location of the mail box would confuse visitors and delivery drivers looking for either the Dudash residence or the Peixoto residence. Leah Peixoto denied damaging the mail box post. She parked her car near the mail box post but she did not damage it.

"The Peixotos installed lights on their property to assist an adult child who has post-traumatic stress disorder from his service in the military. The Peixotos did not install the lights to annoy the [Dudashes]. After the [Dudashes] complained about the lights, the Peixotos hired an electrician to adjust the lights to reduce any potential impact on the [Dudashes].

11

"George Dudash put a bunch of unsightly debris on the edge of his property, immediately next to the Peixotos' property. The Peixotos believe [he] did this in order to annoy the Peixotos.

"The Peixotos filed the lawsuit in good faith, in an effort to obtain a court decision concerning the parties' rights and responsibilities towards each other. Since the Peixotos have moved away, they no longer wish to have anything to do with the [Dudashes] and they voluntarily dismissed their complaint."

C.    *The Trial Court's Ruling and Judgment*

The trial court issued a 10-page written ruling in which it found the Dudashes had failed to sustain their burden of proof as to each cause of action in the cross-complaint.[5]

On the first cause of action for "property obstruction," the court found the Dudashes failed to prove the Peixotos' trees or address marker interfered with the Dudashes' use of the easement.[6]  Assuming hypothetically these items did interfere "in some fashion" with the Dudashes' use of the easement, the court found the Dudashes failed to prove the interference was unreasonable.

---

[5]    The record on appeal does not reflect that either side formally requested a statement of decision under Code of Civil Procedure section 632.

[6]    The trial court stated that for purposes of deciding the first cause of action for " 'property obstruction,' " it was accepting a representation by the Dudashes in the joint trial readiness conference report that the law pertaining to this cause of action provides:  " 'A person with an easement and the owner of the land on which the easement lies each have a duty not to unreasonably interfere with the rights of the other to use and enjoy their respective rights.  Neither party can conduct activities or place obstructions on the property that unreasonably interfere with the other party's use of the property.' "  The record on appeal does not include a copy of the joint trial readiness conference report.

On the second cause of action for "vandalism," the court found the Dudashes failed to prove their mailbox post was bent, or that they sustained economic or non-economic damages as a result of the post being bent.

On the third cause of action for "nuisance behavior," the court found the Dudashes failed to prove the Peixotos' conduct substantially interfered with their use and enjoyment of property, that they suffered substantial actual damage as a result, or that any interference was unreasonable.

On the fourth cause of action for malicious prosecution, the court found the Peixotos had probable cause to file their complaint for declaratory relief and emotional distress. It further found the Peixotos acted under a reasonable, good faith belief they had meritorious claims against the Dudashes, and that they did not act with malice.

On the fifth cause of action for intentional infliction of emotional distress, the court found the Dudashes failed to prove the Peixotos engaged in extreme and outrageous conduct; that the Peixotos' conduct was intended to cause emotional distress or was undertaken in reckless disregard of the probability of causing emotional distress; or that the Dudashes had suffered severe or extreme emotional distress.

As to all causes of action, the court found that even assuming the Dudashes had proved the merits of their claims, they nevertheless failed to sustain their burden of proving they suffered any economic or non-economic damages associated with actionable conduct by the Peixotos.

Finally, and in the alternative, the court found the Peixotos had established the merits of their unclean hands defense[7] by proving George

---

[7] The appellants' appendix does not include the Peixotos' answer to the cross-complaint or other pleading in which they presumably asserted this affirmative defense.

Dudash tore down part of their expensive fence and refused to give the removed portions back to the Peixotos, and put unsightly debris on the edge of his property in order to annoy the Peixotos.

On August 2, 2021, the trial court entered judgment on the cross-complaint in favor of the Peixotos. The Dudashes timely appealed.

DISCUSSION

I.

*Deficiencies in the Dudashes' Appellants' Appendix and Opening Brief*

Before we discuss the Dudashes' contentions on appeal, we pause to make note of certain deficiencies in their appellants' appendix and opening brief.

The Dudashes are representing themselves on appeal. In their notice of election, they opted to provide an appellants' appendix instead of a clerk's transcript. In lieu of a reporter's transcript, they elected to provide a settled statement summarizing the oral proceedings at trial because the trial was not reported by a court reporter. (See Cal. Rules of Court,[8] rules 8.124(a), 8.137(b)(1)(A).) We have received and reviewed the court-certified settled statement as well as the Dudashes' appellants' appendix and opening brief on appeal. It appears the Peixotos participated in the preparation of the settled statement by providing a summary of Leah Peixoto's testimony. (See rule 8.137(e)(1) [after the appellant serves the proposed settled statement, the respondent may serve proposed amendments to the proposed statement].) However, they have not otherwise participated in this appeal by filing a respondents' appendix or a respondents' brief.

---

[8] All further undesignated rules references are to the California Rules of Court unless otherwise noted.

14

Although no respondents' brief has been filed, the Dudashes " 'still bear[ ] the "affirmative burden to show error whether or not the respondent's brief has been filed." ' " (*In re Marriage of F.M. and M.M.* (2021) 65 Cal.App.5th 106, 110, fn. 1.)  Appellate courts approach every appeal with the presumption the appealed judgment is correct.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  To succeed on appeal, the Dudashes have the burden of demonstrating "that the trial court committed an error that justifies reversal of the judgment." (*Ibid.*)  They retain this burden even though their appeal is unopposed.  (*In re Marriage of F.M. and M.M.,* at p. 110, fn. 1.)

As part of this burden, the Dudashes are required to provide this court with a record of the trial proceedings that is accurate and adequate to demonstrate error, and complies with the rules governing preparation of the record.  (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 148–149 (conc. opn. of Werdegar, J.); rules 8.120 [preparation of appellate record], 8.124 [preparation of appellate appendixes].)  Here, the appellants' appendix prepared by the Dudashes contains certain deficiencies.  Under rule 8.124(b)(1)(A), an appellants' appendix must contain all items that rule 8.122(b)(1) requires to be included in the clerk's transcript.  Two of these items are the notice of appeal and the register of actions, where one is available.  (See rule 8.122(b)(1)(A), (F).)  The Dudashes' appellants' appendix lacks these items.  Under rule 8.124(b)(1)(B), an appellant's appendix must also contain "[a]ny item listed in rule 8.122(b)(3) that is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on."  (See rule 8.122(b)(3)(A), (B) [transcript must contain "[a]ny other document filed or lodged in superior court" as well as "[a]ny exhibit admitted in evidence, refused, or lodged"].)

15

Here, the appendix should have, but did not, include the Peixotos' answer to the cross-complaint, joint trial readiness conference report, or the parties' list or lists of trial exhibits.[9]

The appendix is also flawed because it includes documents that are poorly identified, calling into question whether they were part of the trial court record. Under rule 8.124(g), the filing of an appendix constitutes a representation that the appendix "consists of accurate copies of documents in the superior court file." But here, one of the documents included in the appendix is an email printed on paper with a footer stating "PEIXOTO v. DUDASH APPELLANT BRIEF." Plainly, it is not an accurate copy of any document filed or lodged in the trial court. We cannot consider documents that are not accurate copies of documents lodged or filed in the trial court. (*Pulver v. Avco Fin. Services* (1986) 182 Cal.App.3d 622, 632; *Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 151, fn. 6.) Accordingly, we disregard this document. (See *Perez v. Grajales* (2008) 169 Cal.App.4th

---

[9] Since we do not have a register of actions for this case, we do not know for certain what documents were part of the superior court docket. However, we presume that an answer to the cross-complaint was filed, since the trial court purported to resolve the merits of the Peixotos' unclean hands defense, and this is an affirmative defense that would ordinarily be asserted in an answer. We likewise presume the parties submitted one or more exhibit lists, since the court stated in its ruling after bench trial that it was in receipt of a joint trial readiness conference report, and the superior court form pertaining to the preparation of joint trial readiness conference reports requires the parties to submit an exhibit index in which each exhibit must be separately listed. (See SDSC CIV-252 (Rev. 3/19) Joint Trial Readiness Conference Report Format, ¶ E (Exhibits), <https://www.sdcourt.ca.gov/sites/default/files/sdcourt/generalinformation/forms/civilforms/civ252.pdf> [As of Dec. 29, 2022], archived at <https://perma.cc/M4YH-LEJB>.)

16

580, 592, fn. 11 [disregarding unfiled documents improperly included in appellant's appendix].)

Finally, the Dudashes' opening brief on appeal is replete with factual assertions that are unaccompanied by proper and accurate citations to the record and which, so far as we can determine, are unsupported by the record. (See rule 8.204(a)(1)(C) ["any reference to a matter in the record [must be supported] by a citation to the volume and page number of the record where the matter appears"], 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record"].) We disregard all factual assertions in the brief that are not accompanied by accurate references to the record. (See *City of Hesperia v. Lake Arrowhead Community Services Dist.* (2019) 37 Cal.App.5th 734, 740, fn. 1 [appellate court "disregarded factual statements in the parties' briefs that are not accompanied by accurate references to . . . the superior court record"]; *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5 ["appellate courts may ' "disregard any factual contention not supported by a proper citation to the record" ' "].)

We now turn to the merits of the appeal.

II.

*The Dudashes Fail to Establish the Trial Court's Resolution of Their Causes of Action Was Not Supported by Substantial Evidence*

A.      *Contentions on Appeal and Standard of Review*

The Dudashes contend the trial court "made substantial errors in [its] findings of facts" when it ruled that they failed to prove all elements of their

17

causes of action for property obstruction, nuisance behavior, malicious prosecution, and intentional infliction of emotional distress.[10]

When a party challenges a trial court's factual findings, we review the findings for substantial evidence. (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 969 (*Lui*).) " 'Substantial evidence means evidence which is of ponderable legal significance—evidence which is reasonable in nature, credible and of solid value.' " (*Ibid.*) " ' "[A]ny conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Ibid.*) " 'We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' [Citation.] The testimony of a single witness may be sufficient to constitute substantial evidence." (*Ibid.*) Parties challenging a trial court's factual determinations thus bear an " ' "enormous burden." ' " (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

This burden is even weightier where, as here, "the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden[.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279 (*Shaw*).) In such a case, "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid.*, quoting *Roesch v. De Mota* (1944) 24 Cal.2d 563, 571.)

---

[10] The Dudashes have not challenged the trial court's determination that they failed to prove of their cause of action for vandalism.

We conclude the Dudashes have not carried their appellate burden with respect to any of the causes of action they claim were wrongly decided.

B. *Property Obstruction*

The Dudashes contend the trial court erred in its resolution of their first cause of action for "property obstruction" when it found they failed to prove that any interference created by the presence of the Peixotos' address marker and trees within the easement was unreasonable.

The title of the Dudashes' cause of action for "property obstruction" does not correspond with any of the usual names for torts. However, its basis, interference with another's use or enjoyment of property, sounds in nuisance. (See Civ. Code, § 3479 [defining an actionable nuisance to include "an obstruction to the free use of property"].) A nuisance can be either public or private. (See Civ. Code, §§ 3480 ["A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."], 3481 [providing that every nuisance not defined as a public nuisance in Civil Code section 3480 is a private nuisance].)

In their opening brief on appeal, the Dudashes quote a passage from *Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248 (*Mendez*), in which this court discussed the law of private nuisance. The Dudashes describe *Mendez* as a decision that addressed "what constitutes a reasonable versus unreasonable obstruction of property." Through their reliance on *Mendez*, the Dudashes appear to acknowledge their cause of action for property obstruction is, in effect, a cause of action for private nuisance. We agree and construe it accordingly.

A cause of action for private nuisance has the following elements. "First, the plaintiff must prove an interference with his use and enjoyment of

19

his property.  [Citation.]  Second, 'the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer "*substantial actual damage.*" ' [Citation.]  Third,' "[t]he interference with the protected interest must not only be substantial, but it must also be *unreasonable*" [citation], i.e., it must be "of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." ' " (*Mendez, supra,* 3 Cal.App.5th at pp. 262–263, quoting *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 (*San Diego Gas & Electric Co.*), second and third italics added.)

As we observed in *Mendez,* the requirements of substantial damage and unreasonableness "are not inconsequential." (*Mendez, supra,* 3 Cal.App.5th at p. 263.)  They stem from the law's recognition of the following realities: " 'Life in organized society and especially in populous communities involves an unavoidable clash of individual interests.  Practically all human activities unless carried on in a wilderness interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms.  *It is an obvious truth that each individual in a community must put up with a certain amount of annoyance, inconvenience and interference and must take a certain amount of risk in order that all may get on together.  The very existence of organized society depends upon the principle of "give and take, live and let live," and therefore the law of torts does not attempt to impose liability or shift the loss in every case in which one person's conduct has some detrimental effect on another.  Liability for damages is imposed in those cases in which the harm or risk to one is greater than he ought to be required to bear under the circumstances, at least without compensation.'* " (*San Diego Gas & Electric Co., supra,* 13

Cal.4th at pp. 937–938, quoting Rest.2d Torts, § 822, com. g, p. 112, italics added.)

Whether a particular interference is unreasonable is determined according to a balancing test.  (See *Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 160–165 (*Wilson*); CACI No. 2022.)  "The primary test for determining whether the invasion is unreasonable is whether the gravity of the harm outweighs the social utility of the defendant's conduct, taking a number of factors into account."  (*San Diego Gas & Electric Co.*, *supra*, 13 Cal.4th at p. 938.)  The factors relevant to the gravity of a claimed harm are the extent of the harm involved; its character; the value society places on the type of use or enjoyment invaded; the suitability of the particular use to the character of the locality; and the burden on the plaintiff of avoiding the harm.  (*Wilson*, at p. 161, discussing Rest.2d Torts, § 827.)  The factors relevant to the social utility of the interference include the value society places on the primary purpose of the conduct that caused the interference, the suitability of the conduct to the character of the locality, and the impracticability of preventing or avoiding the interference.  (*Wilson,* at p. 162, discussing Rest.2d Torts, § 828.)  Whether a particular interference was unreasonable "is a question of fact: 'Fundamentally, the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case.' "  (*San Diego Gas & Electric Co.*, at pp. 938–939.)

Here, by explicitly ruling that the Dudashes failed to prove any interference created by the Peixotos' address marker and trees was unreasonable, the trial court implicitly found the Dudashes failed to prove the gravity of any harm they suffered outweighed the social utility of the

21

address marker and trees. Substantial evidence supported this implied finding.[11] Leah Peixoto testified she and her husband installed the address marker and trees to beautify the area near the entrance to their property. The items had social utility, and they were not poorly suited to the location in which they were placed. (See *Wilson*, *supra*, 234 Cal.App.4th at p. 162.) Address markers, like directional road signs, are often installed in conspicuous locations along the sides of roads to help drivers find their destination. Roadsides are often improved by landscaping, a feature that has the social benefit of increasing pride in one's community.

As for the gravity of harm suffered by the Dudashes, there was a paucity of evidence at trial establishing that they suffered actual harm from the presence of the address marker and trees in the easement. Although one trial exhibit appeared to show that the Dudashes at some point proposed to create a turn-around area in a circular area that would have encompassed the patch of land occupied by the address marker and trees, the Dudashes did not show what, if any, harm befell them when they were unable to construct

---

[11] Where, as here, the parties do not request a statement of decision pursuant to Code of Civil Procedure section 632, the doctrine of implied findings applies. (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197.) "Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.) " ' "In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." ' " (*Abdelqader*, at p. 197.)

the turn-around in that precise location.[12] They did not establish who the turn-around was for, that they intended to use it, or the effect on them of the presence or absence of a turn-around in that position in the road. Aerial photographs showed the Dudash property had a circular driveway, undermining any inference the Dudashes' ability to reverse direction was impacted by the lack of a dedicated turn-around in the shared roadway. (See Rest.2d Torts, § 827, com. i. [observing that "there are some situations in which one can avoid most of the harm from an interference with his use or enjoyment of land with very little trouble or expense"; in such situations, "the gravity of the harm is less than it would be if the harm were unavoidable or could only be avoided with difficulty"].) They installed their own relocated mailbox post in the easement, south of the paved road near the address marker and trees, which seems to contradict their claim they were harmed by obstacles placed in that area of the easement.

The Dudashes contend the trial court's resolution of their claim was at odds with an observation in its own written ruling. In the factual background section of its ruling, the court stated: "The easement road is relatively narrow. Persons driving larger vehicles may have difficulty turning around, particularly if they drive all the way to the end of the easement road and onto the Peixoto property." The Dudashes argue this observation "established a need for ALL of the easement area" to "create a means for vehicles to safely turn around *at the road end*." (Italics added.) We disagree. The court's observation about the road was stated in hypothetical terms ("[p]ersons driving larger vehicles *may* have difficulty" (italics added)).

_____

[12] The Dudashes alleged in the cross-complaint that they "ceased efforts to utilize the obstructed easement area and instead widened the area just ahead of those obstructions, for use as a 'turn around' at the end of the road."

The Dudashes did not present evidence of the measurements of the road, the size of the vehicles they drove, or the turn radius necessary to accommodate them. They simply did not establish that they or anyone else personally experienced actual difficulty turning around in the road, or that any such difficulty was caused by the presence of the address marker and trees. The court's finding that the Dudashes failed to prove the element of unreasonableness was a reflection of the lack of evidence establishing its hypothetical observation to be a true statement when applied to the Dudashes.

In a separate section of their brief, the Dudashes assert that any reasonable person "who has ever [tried] to maneuver a vehicle larger than a compact car within a 40 foot wide area understands that the area is substantially interfered with when even a few feet of it is reduced" (underline omitted) and that "[t]he effect of those few feet is enough to thwart a 'safe U-turn without backing up' as is the standard for the USPS." In support of these points, they cite a single trial exhibit that is a photograph of a dark-colored sedan or sports utility vehicle sitting sideways in the paved road. It is not apparent whose vehicle it is or what the vehicle is doing, but it appears to have several feet of open paved road to its front and rear. As this description of the exhibit makes clear, it does not provide affirmative support for any of the Dudashes' assertions.

The Dudashes also argue elsewhere in their brief that the trial court should have inferred from the fact that Curry paid an attorney $3,600 to compel the Peixotos to remove the address marker and trees, that the Dudashes incurred comparable legal expenses defending the Peixoto lawsuit and thereby suffered harm attributable to the "obstructions." "An inference is a deduction of fact that may logically and reasonably be drawn from

24

another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) We disagree that it is logical or reasonable to infer from the fact that Curry, who was represented by counsel, paid a certain amount of fees to his attorney, that the Dudashes, who were unrepresented, incurred similar expenses.

Next, in an effort to persuade us that the address marker and trees lacked social utility, the Dudashes assert the items "were not beneficial to the public but rather only to the Peixotos." We disagree. The address marker benefitted others, including the Dudashes. A visitor driving to the Dudash property, upon seeing the Peixoto address marker, would be able to determine by process of elimination that the Dudash property was the one on the left. So the address marker helped the Dudashes as well as the Peixotos. The decorative trees that partly encircled the address marker improved the appearance of the roadside. They were visible to anyone traveling on that part of the road and could be enjoyed by all, including the Dudashes.

The Dudashes complain that the trial court stated the easement was "for access to and from the Dudash and Peixoto properties" (emphasis omitted), which they contend "falsely narrow[ed] the meaning of the term 'road' as used in the easement grant." We read the court's statement as merely describing the nature of the access provided by the easement, as opposed to construing the scope of rights conveyed by the easement grant. More importantly for purposes of our substantial evidence review, we see no indication the court ignored evidence relating to any harm actually suffered by the Dudashes due to the presence of the address marker and trees in the easement.

Finally, the Dudashes argue that by placing the address marker and trees in the easement, the Peixotos violated the terms of the easement, which

25

was granted for road and public utility purposes only. Even if we assume this is true, it is not a circumstance sufficient to support nuisance liability. Liability for a nuisance caused by an intentional invasion of another's interest in land is imposed only when the invasion is unreasonable. (See *Mendez, supra*, 3 Cal.App.5th at pp. 262–263; Rest.2d Torts, §§ 822, 826.) For the reasons we have discussed, substantial evidence supported the trial court's finding that the Dudashes failed to prove any interference with their use of the easement was unreasonable.

C.     *"Nuisance Behavior"*

The Dudashes' opening brief on appeal contains the following heading: "Failed to Find Nuisance Against Peixoto." (Boldface omitted.) This is an ambiguous heading in the context of this case since the cross-complaint contained two causes of action sounding in nuisance: the first cause of action for property obstruction (based on the Peixotos' placement of the address marker and trees within the easement), which we have just discussed, and the third cause of action for "nuisance behavior" (based on allegations the Peixotos installed bright outdoor lighting and a " 'SPITE' " mailbox, parked their car in the easement, and blocked George Dudash as he was driving a backhoe).

The argument under this heading does not clear up the confusion. It appears to be directed at challenging the trial court's finding the Dudashes did not meet their burden to prove all elements of their *third* cause of action because they failed to prove the element of substantial interference (which requires proof of " 'substantial actual damage' " (see *San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 938)). But the body of their argument focuses on the substantial actual damage they claim to have suffered from the address marker and trees (the "obstructions")—which is the factual basis of their *first* cause of action. However, the trial court's ruling on the first cause of action

26

did not include a finding that the Dudashes failed to prove the element of substantial interference. It therefore appears as though the Dudashes have confused the trial court's ruling on their third cause of action with its ruling on their first cause of action.

Due to this apparent mix-up, this section of the Dudashes' brief does not contain an argument capable of supporting reversal on their first *or* third causes of action. We have already upheld the trial court's finding that the Dudashes failed to prove the element of unreasonableness in connection with their first cause of action. Because a plaintiff in a civil suit cannot prevail without proving *all* elements of a cause of action, the Dudashes cannot secure a reversal of the court's denial of relief on their first cause of action even if they succeed in showing the court erred in resolving other elements of this cause of action. Further, because the Dudashes' arguments in this section address the factual basis of their *first* cause of action, they have not presented a developed argument that the court erred in resolving their *third* cause of action.

For these reasons, we need not consider the substance of the arguments in this section of the Dudashes' brief.[13] Instead, we proceed to consider their next challenge.

---

[13] The Dudashes do make one assertion relating to the "nuisance behavior" alleged in the third cause of action: they state that the trial court "ignore[d] the evidence of Peixoto harassment against the [Dudashes] using light trespass[.]" This lone, bare assertion is not a developed argument capable of supporting reversal of the court's ruling on the third cause of action. (See *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894–895 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record."].) To the extent the Dudashes' arguments in this section of their brief are relevant to evaluating the gravity

D.    *Malicious Prosecution*

The Dudashes' next challenge is to the trial court's resolution of their fourth cause of action for malicious prosecution.  "To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with  malice." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50.)

The court found the Dudashes failed to sustain their burden of proof on elements two and three.  In its written ruling, the court gave the following explanation of its reasoning:  "At the time the complaint was filed, the Peixotos and the [Dudashes] were involved in an ongoing dispute about the use of the easement, and those disputes warranted a request for declaratory relief.  Similarly, it was reasonable for the Peixotos to assert claims for emotional distress based on allegations that George Dudash had:  (1) torn down portions of the Peixotos' fence, (2) kept possession of portions of the torn-down [sic] fence; (3) placed unsightly debris at the property line between the two properties; and (4) threatened to bulldoze trees and an address monument placed by the Peixotos near the entrance to their property.  [¶] The [c]ourt is not called upon in this case to adjudicate the merits of the Peixotos' claims; the [c]ourt is only addressing whether there was probable cause to bring the claims.  The [c]ourt finds that there was probable cause. [¶]  As to 'malice,' the [c]ourt finds that the Peixotos had a reasonable, good

---

of harm they suffered due to the presence of the address marker and trees within the easement, we have already considered and rejected them.

28

faith belief that they had meritorious claims against the [Dudashes]. The [c]ourt finds that the Peixotos did not act with malice."

The Dudashes dispute the trial court's probable cause determination. They take particular issue with the court's finding that the Peixotos' causes of action for intentional and negligent infliction of emotional distress were supported by probable cause. They contend the complaint's allegation that Eduardo Peixoto suffered from dementia was "never true." They argue the actions of George Dudash cited by the trial court as evidence supporting these claims either never happened, or happened after the complaint was filed.

They also challenge the trial court's finding that the Peixotos asserted their claims without malice. Because we conclude this finding was supported by substantial evidence, we need not address their challenge to the court's probable cause determination.[14]

---

14    "An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408; see *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment. An appellant . . . who cites and discusses only evidence in [his or] her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii*, at p. 1408.) Here, in disputing the trial court's conclusion that the Peixotos asserted their claims in good faith and without malice, the Dudashes have cited and discussed only the evidence in their favor. As a result, they have forfeited their claim that the court's finding was not supported by substantial evidence. (*Ibid.*; *Foreman & Clark Corp.*, at p. 881.) In any event, their challenge to the court's finding also fails on the merits.

" 'Malicious prosecution is a disfavored action.  [Citations.]  This is due to the principles that favor open access to the courts for the redress of grievances.' " (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 493.)  To prevail on a cause of action for malicious prosecution of a civil proceeding, the plaintiff must prove " 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Id.* at p. 494.)  "The 'malice' element . . . relates to the *subjective intent* or *purpose* with which the defendant acted in initiating the prior action.  [Citation.]  The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose.  [Citation.]  The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.  [Citation.]  It may range anywhere from open hostility to indifference." (*Ibid.*)

"As an element of liability [malice] reflects the core function of the tort [of malicious prosecution], which is to secure compensation for harm inflicted by *misusing* the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement.  Thus the cases speak of malice as being present when a suit is actuated by hostility or ill will, or for some purpose other than to secure relief." (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452 (*Drummond*).)  Malice "can exist . . . where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.  A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other,

additional evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

Examples of situations involving initiation of a civil proceeding for an improper purpose include:  instituting a civil claim when one does not believe the claim to be meritorious, although one "may believe that his claim is meritorious if he believes that the actual facts warrant the claim"; initiating a proceeding "primarily because of hostility or ill will"; initiating a proceeding solely for the purpose of depriving the defendant of a beneficial use of his property, for example, attacking the title of land owned by defendant not "for the purpose not of adjudicating the title but of preventing the owner from selling his land"; and initiating a proceeding to force a settlement that has no relation to the merits of the claim.  (Rest.2d Torts, § 676, com. *c*.)  "Because malice concerns the former plaintiff's actual mental state, it necessarily presents a question of fact." (*Drummond*, *supra*, 176 Cal.App.4th at p. 452.)

Here, the trial court's determination that the Peixotos asserted their complaint in good faith and without malice was supported by substantial evidence.  Leah Peixoto testified she and her husband "filed [their] lawsuit in good faith, in an effort to obtain a court decision concerning the parties' rights and responsibilities towards each other."  The Peixotos' son testified he was "intimately familiar with [his parents'] case" and that they "didn't want any money from Mr. Dudash and only wanted to be able to beautify their property and surroundings."  This testimony was direct evidence the Peixotos' decision to bring their cause of action for declaratory relief was appropriately motivated by a desire to obtain a judicial declaration of the parties' rights and duties with regard to the easement, and was not asserted for an improper purpose or to secure or obtain relief to which they were not otherwise entitled.

Leah Peixoto also testified she and her husband sold their home and moved away "because of the contention caused by George Dudash" which they "couldn't deal with . . . any more." Her son described acts of harassment by the Dudashes and stated that even though his parents had intended to stay in their home "forever," they moved away "as a final act of capitulation to [George Dudash's] alleged abuse of them." This testimony, together with Leah Peixoto's affirmation that she and her husband filed their complaint in good faith, supported the court's finding that the emotional distress claims were not asserted maliciously. It was plain that both of the Peixotos had endured what they believed to be contentious or abusive behavior directed at them by George Dudash, and that they had been distressed by these experiences to the point they felt the need to take life-altering steps to distance themselves from him. The trial court could reasonably infer that both of the Peixotos, including Eduardo, had experienced actual emotional distress that they sincerely attributed to the behavior of George Dudash, and that in asserting emotional distress causes of action against him, they acted under a reasonable, good faith belief the causes of action had merit.

The Dudashes' efforts to convince us that the trial court's resolution of the malice issue was not supported by substantial evidence are not persuasive. They argue the Peixotos' decision to pursue declaratory relief instead of a prescriptive easement or quiet title cause of action showed the Peixotos did not have faith in their legal position, which in turn supported an inference the Peixotos harbored unscrupulous motives. This is simply not a reasonable or tenable inference. (See Evid. Code, § 600, subd. (b) [inference is a deduction "that may logically and reasonably be drawn" from other facts].) The Peixotos had no reason to seek a prescriptive easement, or to have title to property quieted in their names, because they were already the

32

beneficiaries of a written easement. Their declaratory relief cause of action appropriately sought a declaration of the parties' rights under the existing easement. No inference of improper motive arose from the Peixotos' decision to pursue declaratory relief.

The remainder of the Dudashes' arguments fail because they are focused on highlighting evidence they believe supports an affirmative finding of malice. They contend, for example, that the allegation that Eduardo Peixoto suffered from dementia was "never true." They argue the Peixotos' dismissal of their complaint was proof they "didn't intend to face a judge." They state that a video offered at trial showed Leah Peixoto saying, "they can't do anything because we are in a lawsuit," (emphasis omitted) which they argue proved the Peixotos "used their lawsuit to try to control the rights of the [Dudashes]."[15] They claim that the montage of photographs offered at trial showed Eduardo Peixoto standing next to Leah Peixoto during a

_____

[15] In their opening brief, the Dudashes asked us to review this video evidence. The settled statement indicates the video evidence was presented on compact disks (CDs) that were admitted in evidence. By local rule, "[u]nless specifically ordered by the court, all exhibits marked, identified and/or admitted into evidence in a civil case must be retrieved by the offering party at the conclusion of trial. The party introducing the exhibit is responsible for maintaining and preserving that exhibit pending any post-verdict proceedings and appeals, until there is a final disposition of the action or proceeding." (San Diego Superior Court Local Rule 1.4.2.) In this case, the Dudashes did not transmit the CDs with the appellate record. After we were unsuccessful in our efforts to obtain the CDs from the Dudashes or the superior court, we accepted flash drives from the Dudashes that were represented to contain accurate copies of the videos admitted in evidence at trial. We have viewed the referenced video evidence. It is not " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient' " to support a finding of malice. (See *Shaw, supra,* 170 Cal.App.4th at p. 279.)

33

confrontation with George Dudash, and they appear to claim this and other evidence showed the Peixotos did not actually believe George Dudash was abusive to Eduardo Peixoto. Because we have already determined that substantial evidence supported the trial court's finding that the Peixotos asserted their claims without malice, even if we were to accept the Dudashes' view of this evidence, doing so would only establish that the trial evidence of malice was conflicting. And the existence of such a conflict in the evidence does not help the Dudashes on appeal, because under the relevant standard of review, we resolve all evidentiary conflicts in favor of the trial court's decision. (*Lui, supra*, 211 Cal.App.4th at p. 969; *Shaw, supra,* 170 Cal.App.4th at p. 279 [appellant not entitled to reversal absent a demonstration the evidence in appellant's favor was " 'uncontradicted and unimpeached' "].)

We conclude the trial court did not err in finding the Peixotos asserted their claims without malice, and that the Dudashes failed to establish all elements of their cause of action for malicious prosecution.

E.     *Intentional Infliction of Emotional Distress*

The Dudashes' challenge to the trial court's resolution of their intentional infliction of emotional distress cause of action boils down to a one-sentence assertion that "[t]he lower court err[ed] in [its] ruling . . . because . . . a finding for malicious prosecution in [their] favor . . . would support the claim." Since we have already concluded that the court's resolution of their

34

malicious prosecution cause of action was supported by substantial evidence, we reject this challenge.[16]

DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

BUCHANAN, J.

---

[16] The Dudashes also challenge the trial court's alternative determination that their causes of action were barred by the Peixotos' unclean hands defense. Because the Dudashes have not established that the court erred in ruling that they failed to prove the merits of their causes of action, we do not reach this issue.