Filed 9/26/23  Wynne v. Wynne CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MARK WYNNE et al., | |
| Plaintiffs and Respondents, | E080184 |
| v. | (Super.Ct.No. CVRI2203209) |
| JAMES WYNNE et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Godofredo Cuison Magno, Judge.  Affirmed.

Law Offices of Richard A. Lucal, Richard A. Lucal for Defendants and Appellants.

Joseph Sarnowski and Mark Wynne, in pro. per, for Plaintiffs and Respondents.

1

Defendants James Wynne[1] and Scott Kalkwarf, personal representatives of the Estate of Frances Marsh, appeal from an order denying their anti-SLAPP motion. (Code Civ. Proc.,[2] § 425.16.) The instant dispute began with an action filed by Mark Wynne and Kim Wynne, seeking to enforce a settlement agreement that attempted resolve a triad of lawsuits relating to real property located in Riverside County, that was a part of a family trust and was encumbered by a mortgage. A settlement agreement was reached requiring plaintiffs to pay off the mortgage and requiring all defendants to transfer title to Kim Wynne. The first such motion was granted but allowed additional time for defendants to perform their obligations under the agreement.

There remained unresolved issues, so plaintiffs filed a second motion to enforce the settlement agreement, pursuant to section 664.6. This motion resulted in a ruling in which the court found the material terms of the agreement had been substantially performed by defendants and suggested plaintiffs file a breach of contract action for the remaining issues. Plaintiffs did so, and provided notice of the related actions, after which defendants filed an anti-SLAPP motion, pursuant to section 425.16. The trial court

---

[1] The agreement that forms the basis of this action refers to the Estate of Frances Marsh, James Wynne and Timothy Wynne as "the Marsh parties." We adopt that nomenclature where appropriate in this opinion for convenience and to avoid confusion where we refer to the originally named defendants in the background section. Only the Estate of Marsh and James Wynne are parties to this appeal. Mark Wynne and Kim Wynne will be referred to as plaintiffs.

[2] Except as otherwise indicated, statutory references are to the Code of Civil Procedure.

2

denied the anti-SLAPP motion as frivolous and ordered sanctions against defendants. Defendants Kalkwarf and James Wynne appeal.

On appeal, defendants argue the trial court erred in finding that (a) the defendants had not demonstrated that plaintiffs' claims, which, according to defendants were not supported by the record and were subject to judicial estoppel, arose from defendants' petitioning activities, and (b) defendants' motion was frivolous. We affirm.

## BACKGROUND

Because this appeal is from a special motion to strike the complaint, we take the background facts from the underlying complaint, as well as the pleadings and matters of which the trial court took judicial notice in connection with defendants' special motion to strike, filed pursuant to section 425.16.[3] The origins of this case are murky. We discern that there was an estate proceeding in the State of Washington relating to the Estate of Frances Marsh, and that the parties to the current action (Timothy Wynne, James Wynne, Mark Wynne, and Kimberly Wynne, referred to as Trustees of the Tatum Family Trust) were involved in that proceeding in Washington, and later became parties to several cases

---

[3] The trial court denied defendants' requests for judicial notice of numerous documents, taking judicial notice only of the notices of rulings in prior actions. Defendants have not assigned error to the refusal to take judicial on appeal, so any error in that respect has been forfeited. In our review, we will not consider those matters. However, we have taken judicial notice of the court records in case No. RIC1701650, which spawned the constellation of lawsuits leading to the appeal in the current case. (Evid. Code, §§ 452, subd. (d), 459.) The litigation in case No. 1701650, alleging fraud and seeking to quiet title to certain real estate, stemmed from the fact that in 2013, the decedent, Frances Marsh, executed a quitclaim deed in favor of herself and Kim Wynne, but in 2014 she issued a grant deed respecting the same property to herself, James Wynne and Timothy Wynne.

3

filed in Riverside County to quiet title to real estate located in Riverside County, which had apparently not been the subject of an ancillary probate. The various actions included an action by plaintiffs to quiet title to the real property located in Riverside County (*Mark Wynne et al. v. James Wynne et al.,* case No. RIC1701650), and an action by the Estate of Marsh against Mark and Kim Wynne, related to the binding term sheet (*Estate of Marsh et al. v. Mark Wynn, et al.*, case No. CVRI2200278), as well as an action to enter a sister state judgment. (*Estate of Marsh v. Mark Wynne et al.,* case No. CVSW2105525.)

Ultimately, a settlement of the various legal proceedings was reached and was memorialized in a document titled, "Binding Term Sheet,[4]" (agreement) executed and accepted as of July 12, 2021, but there were snags in parties' attempts to complete performance of the agreement because no ancillary probate had been opened in Riverside County to facilitate the execution of the deed from the Estate of Marsh. Among other things, the agreement provided that plaintiffs would pay $175,000 to pay off an existing mortgage on the property, and in return, all the defendants would execute deeds transferring title to the property to Kim Wynne as her separate property.

---

[4] Drafts of and communications about a long form settlement agreement are contained at various points in the record, along with email threads revealing the respective intransigence of the parties who could not seem to come to an agreement about escrow instructions or the type of deed to be used to convey title. Additionally, James Wynne and Timothy Wynne refused to sign a general release of all claims, so the binding term sheet was executed and used in lieu of a full settlement and release of all claims. The binding term sheet reflects an intent to enter into a formal settlement agreement to resolve the pending lawsuits, and contains all the material terms for settlement of the various actions. The formal settlement agreement and release of claims did not happen.

Plaintiffs, Mark and Kim Wynne, filed a motion to enforce the settlement agreement because while they had performed their part, they had not received deeds from the defendants by the date set for performance, which was granted on September 7, 2021. The trial court found the defendants had anticipatorily breached the agreement by failing to provide the necessary quitclaim deeds, due to the Estate of Marsh's failure to file a petition in Probate Court, which rendered it unable to provide a deed.

On February 24, 2022, plaintiffs filed a second motion to enforce the settlement agreement due to defendants' refusal to cooperate in signing escrows instructions, which resulted in the closure of escrow on more than one occasion to facilitate the exchange of documents of title for the payment of money.[5]  On May 10, 2022, the trial court denied this second motion because while defendant's had executed quitclaim deeds instead of grant deeds and although the documents had not been submitted through escrow, the material provisions of the agreement had been substantially performed.  The court noted that the plaintiffs had paid off the encumbrance and the Marsh parties had recorded quitclaim deeds transferring title to Kim Wynne.  The court ruled that if there were any other claims against one another, the parties should address them in a separate action for breach of the agreement.

---

[5]  The agreement refers to an escrow to facilitate the exchange, but it also referred to quitclaim deeds to satisfy defendants' obligation.  An escrow was opened, and defendants' counsel selected Chicago Title Company, to assist in the transaction.  However, Chicago Title Company required the defendants to submit grant deeds, which defendants refused to do.

On August 1, 2022, plaintiffs filed the instant action for breach of contract and breach of the covenant of good faith and fair dealing. The complaint alleged that defendants breached the settlement agreement by refusing to execute documents that would ensure plaintiffs received clear title, and their imposition of unreasonable demands respecting the escrow instructions and title insurance to preclude the use of escrow in the transaction[6] violated the covenant of good faith and fair dealing.

Defendants filed a special motion to strike the complaint as a SLAPP[7] suit, pursuant to section 425.16, asserting that the complaint arises from defendant's petitioning activities protected by the state and federal Constitutions. James Wynne and Timothy Wynn joined in the special motion to strike. Plaintiffs opposed the motion as being frivolous and requested sanctions in the amount of $3500 against defendants. After reviewing the pleadings and exhibits, and hearing arguments of counsel, the trial court denied defendants' motion as frivolous and imposed sanctions in the reduced amount of $2450. In reaching its decision, the trial court found the complaint for breach of contract did not arise from defendants petitioning activities, and, having failed to establish the first prerequisite for a special motion to strike, the court did not need to reach the second requirement under the statute.

Defendants Kalkwarf and James Wynne appealed.

---

[6] The agreement included a term requiring an escrow to facilitate the exchange of money for title but specified the instructions must be approved and accepted by the Marsh Estate.

[7] The acronym SLAPP refers to Strategic Lawsuit Against Public Participation.

DISCUSSION

Defendants argue that the trial court erred in denying the special motion to strike as frivolous and ordering sanctions against defendant Kalkwarf. We address each issue separately.

A. *General Principles Relating to Anti-SLAPP Motions*

Section 425.16, the anti-SLAPP statute, authorizes a trial court to strike a cause of action against a person arising from that person's exercise of the constitutional rights to free speech and petition for redress of grievances. The statute was enacted to discourage lawsuits brought primarily to chill the valid exercise of these constitutional rights. (§ 425.16, subd. (a); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 (*Flatley*).) A proceeding under this section is referred to as a "special motion to strike." Review of an order granting or denying a special motion to strike is de novo. (*Flatley, supra,* at p. 325.)

"In determining whether the anti-SLAPP statute applies in a given situation, we analyze whether the defendant's act underlying the plaintiff's cause of action itself was an act in furtherance of the right of petition or free speech." (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) We employ a two-step process: we must determine (a) whether the challenged cause of action is one arising from protected activity (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479), and, if so, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 448-449.) "'Only a cause of action that satisfies *both* prongs of the

anti-SLAPP statute - i.e., that arises from protected speech or petitioning *and* lacks even minimal merit - is a SLAPP, subject to being stricken under the statute.'" (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 675, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

The party bringing the motion to strike has the initial burden of making a prima facie showing that the lawsuit qualifies as a SLAPP suit; if it does not, the motion to strike may be summarily denied without putting on the plaintiff the burden of establishing the probability of success on the merits. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 820, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68 (*Equilon Enterprises*); see also *Flatley, supra,* 39 Cal.4th at p. 315.)

We review an order granting or denying a special motion to strike under section 425.16 *de novo*. (*Park v. Bd. of Trustees, Cal.State Univ.* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b)(2); *Navellier, supra,* 29 Cal.4th at p. 89.) "However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

8

### 1. *Protected Activity*

A SLAPP action arises from any act of the defendant in furtherance of the person's right of petition or free speech. (§ 425.16, subd. (b)(1).) Such an act includes, among other things, any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest (§ 425.16, subd. (e)), or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (*Ibid*.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*Id.,* at p. 1063, citing *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; accord, *Equilon Enterprises, supra*, 29 Cal.4th at p. 66.)

To determine whether the conduct arises from protected activity, a court ruling on an anti-SLAPP motion should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability. (*Park, supra,* 2 Cal.5th at p. 1063.) Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.,* at p. 1060.)

"'[T]he mere fact that an action was filed after protected activity took place does

9

not mean that the action arose from that activity for purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability - and whether that activity constitutes protected speech or petitioning.' [Citation.]" (*Park, supra,* 2 Cal.5th at p. 1063.)

"It is important to note that the anti-SLAPP statute does not immunize or insulate defendants from *any* liability for claims arising from protected activity. It only provides a procedure for weeding out, at an early stage, such claims that are meritless." (*San Diegans for Open Government v. San Diego State Univ. Research Foundation* (2017) 13 Cal.App.5th 76, 95, citing *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; *Navellier, supra,* 29 Cal.4th at p. 89.) Thus, "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements, forming the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.)

Additionally, a trial court must distinguish between speech or petitioning activity that is mere evidence related to liability and liability that is based on speech or petitioning activity. ((*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215.) "[T]he statute does not automatically apply simply because the complaint refers to some protected speech activities." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

Likewise, an action for breaching the terms of a settlement agreement does not implicate protected activity: "Under the explanatory provisions in subdivision (e) of section 425.16, defendant's entering into the settlement agreement during the pendency

10

of the federal case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement after the federal case was concluded is not protected activity because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16.  Thus, the instant suit is based on alleged conduct of defendant that is *not* protected activity." (*Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1118 (*Applied Business Software*).)

Although we agree that the filing of a complaint in breach of a general release is a writing made in connection with an issue under review by a judicial body and therefore satisfies the first prong of the analysis (see *Navellier, supra*, 29 Cal.4th at pp. 88–89; see also *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408-1409), and that the process of negotiating a settlement may qualify as a protected activity (see *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963-964), the filing of a complaint for breach of that settlement agreement does not arise from protected activity (unless it could be said that the act of breaching the agreement, or actively preventing completed performance of the settlement agreement, can be considered a protected activity).  (*Applied Business Software, supra,* 164 Cal.App.4th at p. 1118.)

Here, a settlement arose out of multifarious and protracted proceedings which attempted to resolve the disputes among the various parties by providing for the exchange of money in return for "clear title" to real property.  The record amply demonstrates that defendants were actively engaged in a "scorched earth" course of conduct to prevent the

11

need to comply with the term requiring the Estate to provide "clear title," by refusing to accept as approved any escrow instructions designed to insure completed performance of the settlement agreement. Defendants' machinations had the desired effect of postponing its performance and avoiding an escrow, which would have required execution of grant deeds to satisfy applicable title insurance requirements. Defendants therefore exploited the provision that escrow instructions be approved by the Estate to repeatedly close escrows opened to consummate the agreement to transfer clear title to Kim Wynne in return for payoff of the Marsh encumbrance.

After the date set for performance and after the plaintiffs made their first motion to enforce the settlement agreement, defendants executed their quitclaim deeds, which were not submitted to escrow as required by the agreement. These quitclaim deeds in favor of plaintiff Kim Wynne were recorded, which prompted the trial court to deny the second motion to enforce the settlement because the material terms had been performed, and to recommend that a separate action for breach of contract be filed to address other issues. The current lawsuit arose from the allegations that defendants' course of conduct violated the agreement's requirement that defendants convey "clear title," not from any petitioning conduct by the defendants.

Defendants own reply to plaintiff's opposition to the anti-SLAPP motion acknowledged that the action arose from an effort by plaintiffs to enforce the settlement agreement, although they rely on inapposite authority in arguing that such actions can arise from protected activities. We have no reason to address the hypothetical situation in

which such an action might be deemed to arise from a protected activity where defendants failed to establish that it did so in this action. Defendant's acknowledgment that the gravamen of the complaint was an action for relief from a breach of the settlement agreement and the history of the case demonstrates that defendant's conduct was not protected activity.

Having failed to meet the first prong of the two-pronged inquiry into the propriety of anti-SLAPP relief, defendants failed to satisfy the requirements of section 425.16; the trial court was correct in denying the motion.

### B. Propriety of Sanctions for a Frivolous Motion.

Section 425.16, subdivision (c), provides "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] [s]ection 128.5." Section 128.5 in turn, provides that a trial court may award "reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) The statute defines frivolous as "totally and completely without merit or for the sole purpose of harassing an opposing party." (*Id.*, subd. (b)(2).)

"'Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit. [Citation.] An order awarding attorneys' fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), is reviewed

13

under the abuse of discretion test.  [Citation.]  A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.'  [Citations.]"  (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 36-37.)

Having read the entire record, we find no abuse of discretion.  To the contrary, all of the defendants' conduct was intended for the purpose of delaying execution of the contract and frustrating a term of the agreement requiring the opening of an escrow.  The motion was frivolous, as well as done in bad faith, yet the defendants benefitted from the trial court's reduction in the amount of sanctions by imposing the modest amount of $2450.  There was no error in imposing sanctions for the frivolous motion.

### DISPOSITION

The judgment is affirmed.  Plaintiffs Mark and Kim Wynne are entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

14